**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| T. ROWE PRICE GROWTH STOCK FUND, INC., et al., | Civil Action No. 16-CV-5034-MAS-LHG |
| Plaintiffs, | (Oral Argument Requested) |
| v. | Motion Day: September 5, 2017 |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

*Captions continue on the next page*

## OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF
## TANYA CARRO'S MOTION TO DISMISS

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile:  (973) 297-6615

William J. Schwartz
Laura Grossfield Birger
COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
*Admitted Pro Hac Vice*

*Attorneys for Defendant Tanya Carro*

| | |
|---|---|
| EQUITY TRUSTEES LIMITED AS RESPONSIBLE ENTITY FOR T. ROWE PRICE GLOBAL EQUITY FUND, et al., | Civil Action No. 16-CV-6127-MAS-LHG |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| PRINCIPAL FUNDS, INC., et al., | Civil Action No. 16-CV-6128-MAS-LHG |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| BLOOMBERGSEN PARTNERS FUND LP, et al., | Civil Action No. 16-CV-7212-MAS-LHG |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

THE COMPLAINTS' ALLEGATIONS REGARDING TANYA CARRO ............................... 2

ARGUMENT ................................................................................. 5

I.   PLAINTIFFS FAIL TO ALLEGE THAT MS. CARRO MADE ANY FALSE
     STATEMENTS ......................................................................... 5

     A.   The Complaints Do Not Allege That The Statements Carro Made During
          The October 26, 2015 Conference Call Were False ............................... 5

     B.   The Complaints Do Not Properly or Specifically Attribute Any Other
          False Statements to Ms. Carro ............................................... 8

II.  PLAINTIFFS FAIL TO ALLEGE THAT MS. CARRO ACTED WITH
     SCIENTER ......................................................................... 11

     A.   None Of The Scienter Allegations Relate To The October 26 Statements.......... 12

     B.   The Company's Claim That Ms. Carro's "Improper Conduct" Contributed
          To Accounting Errors Does Not Establish A Strong Inference Of Scienter....... 13

     C.   The "Additional Indicia of Defendants' Scienter" Allegations Rely On
          Impermissible Assumptions................................................... 16

CONCLUSION............................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir.1999)..............................................................................9, 17

*In re Alpharma Sec. Litig.*,
   372 F.3d 137 (3d Cir. 2004)............................................................................15, 17

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
   380 F. Supp. 2d 574 (D.N.J. 2005) ............................................................13, 14, 15

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir.1997)..............................................................................5, 6

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004)..................................................................................9

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)............................................................................5, 6, 8

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir.1990) .................................................................................9

*In re Ferro Corp. Sec. Litig.*,
   2007 WL 1691358 (N.D. Ohio June 11, 2007)...........................................................8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ..............................................................................10

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
   436 F.Supp.2d 873 (N.D. Ohio 2006)......................................................................8

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004)................................................................................13

*Home Care Indus. v. Murray*,
   2002 WL 32627452 (D.N.J. Nov. 27, 2002) ............................................................9

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   277 F.3d 658 (3d Cir. 2002)................................................................................11

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir.2009).................................................................8, 11, 12, 14

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007) ..................................................................15, 16

## TABLE OF AUTHORITIES
## CONTINUED

Page(s)

*In re Interpool, Inc. Sec. Litig.*,
  2005 WL 2000237 (D.N.J. Aug. 17, 2005) ..........................................15

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)..........................................................................9

*Kennilworth Partners L.P. v. Cendant Corp.*,
  59 F. Supp. 2d 417 (D.N.J. 1999) .................................................15, 7

*Klein v. Gen. Nutrition Cos.*,
  186 F.3d 338 (3d Cir. 1999)...............................................................9

*In re Merck & Co., Inc.*,
  2011 WL 3444199 (D.N.J. Aug. 8, 2011) .......................................10, 11

*Messner v. USA Techs., Inc.*,
  2016 WL 1466543 (E.D. Pa. Apr. 13, 2016) .......................................15

*In re Milestone Sci. Sec. Litig.*,
  103 F. Supp. 2d 425 (D.N.J. 2000) ....................................................17

*Nappier v. PricewaterhouseCoopers LLP*,
  227 F.Supp.2d 263 (D.N.J. 2002) ......................................................15

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ....................................................11

*In re Nice Sys., Ltd. Sec. Litig.*,
  135 F. Supp. 2d 551 (D.N.J. 2001) ..................................................6, 7

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2009)...............................................................5

*In re Party City Sec. Litig.*,
  147 F. Supp. 2d 282 (D.N.J. 2001) .....................................................7

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002)...............................................................9

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006)..............................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................5, 8, 12, 14

ME1 25054218v.1

## TABLE OF AUTHORITIES
## CONTINUED

**Page(s)**

*In re Valeant Pharmaceuticals Int'l, Inc.*,
   3:15-cv-07658 (MAS)(LHG)....................................................................................2

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir.1996)....................................................................................15

*In re Wilmington Tr. Sec. Litig.*,
   852 F. Supp. 2d 477 (D. Del. 2012).........................................................................8

*Winer Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007)........................................................................ *passim*

**Statutes & Rules**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4.................................11, 12

ME1 25054218v.1

## PRELIMINARY STATEMENT

In each of the four related Complaints,[1] plaintiffs refer to Tanya Carro, the former corporate controller for Valeant Pharmaceuticals International, Inc. (the "Company" or "Valeant"), only a handful of times.  And although the Complaints identify scores of allegedly false statements made by various defendants, only two such statements, both made during an October 26, 2015 conference call, are specifically attributed to Ms. Carro.  In those two statements, Ms. Carro described the Company's historical view about whether to separately disclose its relationship with Philidor in its financial statements.

Nowhere do plaintiffs dispute the accuracy of Ms. Carro's after-the-fact summary of the Company's disclosure analysis concerning Philidor.  Nothing in the Complaints provides any basis for plaintiffs' claim that Ms. Carro made misstatements to investors.  Further, the Complaints fail to allege scienter.  Plaintiffs repeatedly focus on Valeant's March 21, 2016 8-K, which claimed that Ms. Carro's "improper conduct" contributed to accounting errors that led to a restatement of revenues (the "Restatement").  No matter how many times plaintiffs repeat the phrase "improper conduct," it falls far short of supporting a strong inference that Ms. Carro acted with fraudulent intent when she made the statements alleged in the Complaints.  None of the

---

[1] This Memorandum will refer collectively to the complaints in the four related actions (*T. Rowe Price Growth Stock Fund, Inc.*, et al. v. Valeant Pharmaceuticals Int'l, Inc., et al., 16-cv-5034-MAS-LHG; *Equity Trustees Limited et al.  v. Valeant Pharmaceuticals Int'l, Inc. et al.*, 16-cv-6127-MAS-LHG; *Principal Funds, Inc. and Principal Variable Contracts Funds, Inc. v. Valeant Pharmaceuticals Int'l, Inc. et al.*, 16-cv-6128-MAS-LHG; and *BloombergSen Partners Fund LP and BloombergSen Master Fund LP v. Valeant Pharmaceuticals Int'l, Inc. et al.*, 16-cv-7212-MAS-LHG) as the "Complaints," and the plaintiffs of the aforementioned actions will be referred to collectively as "plaintiffs."  For ease of reference, this Memorandum will cite to all four Complaints throughout as follows: citations to the T. Rowe Price Growth Stock Fund Complaint will be cited as "*T. Rowe Price* Compl."; the Equity Trustees Limited Complaint will be cited as "*Equity Trustees* Compl."; the Principal Funds, Inc. Complaint will be cited as "*Principal Funds* Compl."; and the BloombergSen Partners Fund LP Complaint will be cited as "*BloombergSen* Compl."

1

facts alleged in the Complaints establish that Ms. Carro believed her statements were false or misleading when made or that she was deliberately ignorant of obvious wrongdoing.

The Complaints should be dismissed as to Ms. Carro for several independent reasons.

*First*, the Complaints fail to plead with particularity that Ms. Carro made any material false statements to investors.

*Second*, Ms. Carro's "improper conduct" that purportedly contributed to the Restatement is entirely unrelated to her alleged misstatements.  Plaintiffs cannot infer scienter from conduct having nothing to do with the particular false statements that are alleged.

*Third*, the fact that the Company labeled Ms. Carro's conduct "improper" does not establish scienter.  "Improper" has several possible meanings, and plaintiffs allege no facts demonstrating why their interpretation – that Ms. Carro intended to deceive investors – is the most plausible.

*Fourth*, the scienter allegations attributed to all "Executive Defendants" impermissibly rely on conclusory assumptions about Ms. Carro's position in the Company, assert without factual basis that she must have known about the fraud, and do not meet the particularized pleading standard the law requires.[2]

## THE COMPLAINTS' ALLEGATIONS REGARDING TANYA CARRO

Until the spring of 2016, Tanya Carro was Valeant's Corporate Controller.  *T. Rowe Price* Compl. ¶ 30; *Equity Trustees* Compl. ¶ 40; *Principal Funds* Compl. ¶ 32; *BloombergSen* Compl. ¶ 31.  The Complaints allege that Ms. Carro made just two false statements, both during an October 26, 2015 conference call with investors and analysts (hereinafter, the "October 26

---

[2] On September 13, 2016, Defendant Carro filed a Motion to Dismiss the Consolidated Complaint in the related case, *In re Valeant Pharmaceuticals Int'l, Inc.*, 3:15-cv-07658-MAS-LHG.  On April 28, 2017, the Court issued a Memorandum Opinion denying that motion without referencing the arguments made by Carro.

Statements").  *T. Rowe Price* Compl. ¶ 247; *Equity Trustees* Compl. ¶ 250; *Principal Funds*

Compl. ¶ 242; *BloombergSen* Compl. ¶ 236.  During that call, Ms. Carro was asked to address

why Valeant had not specifically disclosed Philidor in its prior financial statements.  The

Complaints allege:

- "Carro claimed that, as of year-end 2014, '***Philidor is not considered to be material to Valeant's business for reporting purposes***' at the end of 2014 because the 'GAAP requirement for disclosing sales to large customers is 10% of revenue' and in December 2014 Philidor's year-to-date net sales were $111 million; and

- Carro claimed that for the first two quarters of 2015 '***Philidor was not specifically mentioned in our disclosures because it had not been material to the consolidated financial statements***,' because '[i]t represented 1% or less of total assets and 7% or less of consolidated net revenues since the fourth quarter 2014.'"

*T. Rowe Price* Compl. ¶ 247(a-b); *Equity Trustees* Compl. ¶ 250(a-b); *Principal Funds* Compl. ¶

242(a-b); *BloombergSen* Compl. ¶ 236(a-b).  *See also* Exhibit 1 to the Declaration of Richard

Hernandez, (Oct. 26, 2015 Call Transcript) at 9-10.[3]  Plaintiffs allege that the highlighted

portions of the excerpts above "were false and misleading when made," (*T. Rowe Price* Compl. ¶

254; *Equity Trustees* Compl. ¶ 257; *Principal Funds* Compl. ¶ 249; *BloombergSen* Compl. ¶

243) for a series of reasons, all relating generally to Valeant's business strategy, business risks,

financial performance, guidance, and accounting practices or controls.  *T. Rowe Price* Compl. ¶

149; *Equity Trustees* Compl. ¶ 152; *Principal Funds* Compl. ¶ 144; *BloombergSen* Compl. ¶

143.  Although plaintiffs allege that these reasons demonstrate the falsity of numerous statements

---

[3]  All exhibits referred to in this Memorandum are exhibits to the Declaration of Richard Hernandez and will be cited as "Ex."  All exhibits cited herein are incorporated into the Complaints by reference and therefore can be properly considered by the Court in deciding this Motion to Dismiss.  *See Winer Family Tr. v. Queen*, 503 F.3d 319, 328-29 (3d Cir. 2007) (holding that the district court "properly probed documents attached to defendants' motion to dismiss . . . because these documents were integral to and/or explicitly relied upon by the amended complaint").

in other paragraphs of the Complaints, including the two isolated statements attributed to Ms. Carro, none refer or relate specifically to the October 26 Statements.

Separately, plaintiffs refer several times to the Company's March 21, 2016 8-K (the "March 21 8-K"), in which the Company disclosed that $58 million in revenue from sales to Philidor, and the "earnings impact" of the revenue, "should have been recognized at a later date than when originally recognized." Ex. 2 (Mar. 21, 2016 8-K). *See also T. Rowe Price* Compl. ¶¶ 313, 330-33; *Equity Trustees* Compl. ¶¶ 316, 333-36; *Principal Funds* Compl. ¶¶ 308, 325-28; *BloombergSen* Compl. ¶¶ 302, 319-22.  The Complaints do not allege that Ms. Carro made any false statements in connection with the Restatement.

As their only specific evidence of scienter for Ms. Carro, plaintiffs refer repeatedly to the Company's statement in the March 21 8-K that the unspecified "improper conduct of the Company's former Chief Financial Officer and former Corporate Controller, which resulted in the provision of incorrect information to the [Audit] Committee and the Company's auditors, contributed to the misstatement of results . . . . ."[4] Ex. 2.  *See also T. Rowe Price* Compl. ¶¶ 30, 412; *Equity Trustees* Compl. ¶¶ 40, 415; *Principal Funds* Compl. ¶¶ 32, 407; *BloombergSen* Compl. ¶¶ 31, 401.  The Complaints also refer to the Company's statement in the March 21 8-K that Ms. Carro was placed on "administrative leave," and allege that, several months after the Restatement, Ms. Carro was replaced as Corporate Controller.  *T. Rowe Price* Compl. ¶¶ 30, 412; *Equity Trustees* Compl. ¶¶ 40; 415, *Principal Funds* Compl. ¶¶ 32, 407; *BloombergSen* Compl. ¶¶ 31, 401.

---

[4] The Complaints all mischaracterize the Company's statement as a claim that Ms. Carro's "improper conduct" resulted in the provision of incorrect information to the Ad Hoc Committee, but the March 21 8-K makes clear that the reference was to Valeant's Audit and Risk Committee.  *See T. Rowe Price* Compl. ¶¶ 30, 412; *Equity Trustees* Compl. ¶¶ 40, 415; *Principal Funds* Compl. ¶¶ 32, 407; *BloombergSen* Compl. ¶¶ 31, 401; Ex. 2.

4

## ARGUMENT

I. **PLAINTIFFS FAIL TO ALLEGE THAT MS. CARRO MADE ANY FALSE STATEMENTS**

    A. **The Complaints Do Not Allege That The Statements Carro Made During The October 26, 2015 Conference Call Were False**

"To state a valid securities fraud claim under Rule 10b–5, a plaintiff must first establish that [a] defendant, in connection with the purchase or sale of a security, made 'a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading.'" *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2009) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir.1997)). The Private Securities Litigation Reform Act (the "PSLRA") requires plaintiffs to "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Winer Family Tr. v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007). That is, for each alleged false statement, the complaint must contain specific, particularized allegations showing why the statement is false. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168 (3d Cir. 2014) (affirming dismissal of complaint where plaintiffs' "allegations are insufficient to maintain a plausible claim of falsity . . . under the 'exacting pleading requirements' of the PSLRA," and where plaintiffs had "failed 'to specify . . . the reason or reasons why the statement is misleading'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 322 (2007)).

Plaintiffs identify two allegedly misleading statements made by Ms. Carro, namely, that prior to December 2014, "Philidor [was] not considered to be material to Valeant's business for reporting purposes," and that "Philidor was not specifically mentioned in our disclosures [until October 2015] because it had not been material to the consolidated financial statements." *T. Rowe Price* Compl. ¶ 247; *Equity Trustees* Compl. ¶ 250; *Principal Funds* Compl. ¶ 242;

*BloombergSen* Compl. ¶ 236.  But nowhere do the Complaints actually allege that these statements were false or misleading.  In fact, both statements were accurate recitations of Valeant's historical disclosure analysis concerning Philidor.

In speaking to investors during the October 26, 2015 conference call, Ms. Carro was asked to articulate the Company's "disclosure considerations relating to Philidor" – why, prior to October 2015, the Company had not considered Philidor material for accounting purposes and had not specifically disclosed it in the Company's financial statements.  Ex. 1 at 10.[5]  Ms. Carro first stated that, at the time of the purchase of the option to acquire Philidor, sales to Philidor represented a small fraction of the Company's overall business – just $111 million.[6]  *Id*.  She explained that the "GAAP requirement for disclosing sales to large customers is 10% of revenue," so Philidor was not considered material "for reporting purposes" or specifically identified in the Company's financial statements.  *Id*.

Next, Ms. Carro recounted that the purchase of the option was not specifically disclosed because that transaction did not meet Valeant's "pre-established internal threshold for specifically disclosing transactions in the business combination footnotes to its quarterly and annual financial statements . . . ."  Ex. 1 at 9.  For this reason, and because Philidor "represented 1% or less of total assets and 7% or less of consolidated net revenues since the fourth quarter of

---

[5] Courts are encouraged to view allegedly false statements in context, especially where doing so prevents plaintiffs from maintaining baseless fraud claims by "extracting an isolated statement from a document" whose "full context" makes it "clear that the statement was not fraudulent." *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565–66 (D.N.J. 2001) (quoting *In re Burlington*, 114 F.3d at 1426).  *See also City of Edinburgh Council*, 754 F.3d 159, 168–69 (finding that complaint was properly dismissed after reading the full press release incorporated by reference which provided three bases for the allegedly misleading statement).

[6] Philidor contributed "less than 1%" of Valeant's total consolidated net revenue for 2014. *See* Ex. 3 (VRX 10-K FY 2015) at 44.

2014," Ms. Carro stated that Philidor was not "material to the consolidated financial statements." *Id.*[7]

Plaintiffs plead no facts that refute Ms. Carro's description of the Company's prior reasoning concerning Philidor.  The October 26 Statements were made after Valeant's relationship with Philidor was disclosed to the public (*see T. Rowe Price* Compl. ¶ 232; *Equity Trustees* Compl. ¶ 235; *Principal Funds* Compl. ¶ 227; *BloombergSen* Compl. ¶ 221), and concerned only the Company's *prior* disclosure considerations.  Plaintiffs do not allege that Ms. Carro inaccurately represented the Company's view, prior to October 2015, regarding whether Philidor was material or should be separately disclosed.  Nor do plaintiffs allege that Ms. Carro's description of the Company's financials was incorrect or misleading.  Nowhere do plaintiffs allege that sales to Philidor were actually greater than 10% of Valeant's total revenues in 2014, or that the option transaction exceeded the internal Valeant threshold for disclosure.  In short, plaintiffs do not actually allege that what Ms. Carro said to investors on October 26, 2015 was false.  *See In re Nice Sys.*, 135 F. Supp. 2d 551, 575 (D.N.J. 2001) (dismissing complaint where plaintiffs failed to allege any false statements); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 300 (D.N.J. 2001) (dismissing complaint because "[s]imply referring to a series of public statements and then alleging, in a general and conclusory manner, that those disclosures were false or misleading is insufficient").

Instead of pleading falsity with particularity, plaintiffs cite to a series of reasons that purport to explain why dozens of alleged statements by various Executive Defendants were false. *See T. Rowe Price* Compl. ¶ 149; *Equity Trustees* Compl. ¶ 152; *Principal Funds* Compl. ¶ 144;

---

[7]  Ms. Carro also clarified for investors that, while Philidor was not specifically identified prior to October 2015, "the consolidation of variable interest entities, which includes Philidor" was described in summary footnotes in Valeant's 2014 10-K.  Ex. 1 at 10.

*BloombergSen* Compl. ¶ 143.  These explanations concern purported problems with Valeant's business strategy, business risks, financial performance, or unrelated accounting practices.  But none has any bearing on the accuracy of the October 26 Statements.

"[R]efer[ring] to a list of alleged improprieties that may or may not have anything to do with the statements" and "requiring the Court to try to match the allegedly fraudulent statements to the allegations of wrongdoing scattered throughout the Complaint" is not sufficient to plead falsity.  *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F.Supp.2d 873, 904 (N.D. Ohio 2006).  *See also In re Ferro Corp. Sec. Litig.*, 2007 WL 1691358, at *19 (N.D. Ohio June 11, 2007) (Where plaintiffs "leave[] it up to the Court to match the allegedly false statement(s) with the reason(s) why the statement is false," they have not adequately pleaded falsity.).  It is simply "not sufficient" for plaintiffs to "direct[] the court to a laundry list of reasons why a statement could be untrue" and never "address [why] each individual statement is false or misleading."  *In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012).  None of the factual allegations in the Complaint – including the undifferentiated reasons for alleged falsity – establish that Ms. Carro made any misstatement to investors.

### B.  The Complaints Do Not Properly or Specifically Attribute Any Other False Statements to Ms. Carro

Any allegedly false statements other than the two October 26 Statements are not specifically attributed to Ms. Carro and thus fail to satisfy the PSLRA's pleading requirements.

*First*, the PSLRA has "exacting pleading requirements" for falsity.  *City of Edinburgh Council,* 754 F.3d at 168 (citing *Tellabs,* 551 U.S. at 313; *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir.2009)).  *See also Winer Family Tr.*, 503 F.3d at 326 (plaintiffs must "specify each allegedly misleading statement").  "[A]t a minimum, . . . the plaintiff [is required to] identify the speaker of allegedly fraudulent statements."  *In re Rockefeller Ctr. Props., Inc.*

8

*Sec. Litig.*, 311 F.3d 198, 218 (3d Cir. 2002) (citing *Klein v. Gen. Nutrition Cos.,* 186 F.3d 338

(3d Cir. 1999)).  *See also Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir.

2004) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir.1999) and *DiLeo v.

Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)) (holding that "plaintiffs asserting securities

fraud claims must specify 'the who, what, when, where, and how'" for each allegedly false

statement).

Aside from the two statements discussed above, the Complaints do not identify Ms. Carro

as the maker of any other false statements.  Allegations that Carro attended a presentation are

insufficient to identify her as the person making a false statement.[8]  *See Klein*, 186 F.3d at 345

(affirming dismissal of complaint for "fail[ing] to attribute the [false] statement to any specific

member of GNC management"); *Home Care Indus. v. Murray*, 2002 WL 32627452, at *6

(D.N.J. Nov. 27, 2002) (dismissing counterclaim because it "fail[ed] to identify the speakers of

the allegedly fraudulent statements").  Therefore, none of the false statements alleged in the

Complaints – other than the October 26 Statements – can be attributed to Carro, as required by

the PSLRA.

*Second*, the Complaints do not allege that Carro had "ultimate authority" over any of the

Company's presentations or releases such that she could be considered the "maker" of the

allegedly false statements they contain.  Under *Janus Capital Group, Inc. v. First Derivative

Traders*, "[o]ne 'makes' a statement by stating it," and "[f]or purposes of Rule 10b-5, the maker

of a statement is the person or entity with ultimate authority over the statement, including its

content and whether and how to communicate it."  564 U.S. 135, 142 (2011).  Importantly,

---

[8] Carro is alleged to have attended only two presentations, on October 26, 2015 and November
10, 2015.  *See T. Rowe Price* Compl. ¶¶ 243, 250; *Equity Trustees* Compl. ¶¶ 246, 253; *Principal
Funds* Compl. ¶¶ 238, 245; *BloombergSen* Compl. ¶¶ 232, 239.

unlike other Executive Defendants, Carro was not an officer, director, or Board member. She was not a member of Finance and Transactions Committee or the Audit and Risk Committee whose members allegedly reviewed the Philidor transaction and approved of accounting related to it. *T. Rowe Price* Compl. ¶ 126; *Equity Trustees* Compl. ¶ 136; *Principal Funds* Compl. ¶ 128; *BloombergSen* Compl. ¶ 127. Plaintiffs do not allege that Carro had any control whatsoever over any Company presentations and releases, attended many of the presentations described in the Complaint, or was even involved in preparing any presentations or releases. Generic declarations of Company support made by other executives – as when Pearson stated, "we stand by our accounting treatment" – also fail to establish that Carro had control over any releases and presentations. *See T. Rowe Price* Compl. ¶ 244(a); *Equity Trustees* Compl. ¶ 247(a); *Principal Funds* Compl. ¶ 239(a); *BloombergSen* Compl. ¶ 233(a); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 427 (7th Cir. 2015) (holding that the CEO was not liable for statements in company releases unless he "*actually exercised control* over the content of the press releases and whether and how they were communicated") (emphasis added) (cited in Opp. at 27). In short, there are no allegations that establish that Carro had "ultimate authority" over any statements made by the Company or by her superiors.

*Finally*, any attempt to attribute statements made by other executives or by the Company to Carro would be exactly the type of "patently insufficient 'group pleading'" that is routinely rejected. *See In re Merck & Co., Inc.*, 2011 WL 3444199, at *19 (D.N.J. Aug. 8, 2011) (citing *Winer Family Tr.*, 503 F.3d at 337). It is improper for plaintiffs to attribute statements in "group-published documents" to "officers and directors" simply because they "have day-to-day control or involvement in regular company operations." *In re Merck & Co.* at *19 (citing *Winer*

*Family Tr.*, 503 F.3d at 335).  This principle applies even more strongly to Carro, who was neither an officer nor a director.

## II.   PLAINTIFFS FAIL TO ALLEGE THAT MS. CARRO ACTED WITH SCIENTER

The PSLRA requires that plaintiffs "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind" as to each alleged misstatement.  15 U.S.C. § 78u–4(b)(2)(a) (emphasis added).  That required scienter is "a mental state embracing intent to deceive, manipulate or defraud, or, at a minimum, highly unreasonable (conduct), involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Ikon Office Sols., Inc. Sec. Litig.*, 277 F.3d 658, 667 (3d Cir. 2002) (citations omitted).

Pieces of the scienter puzzle can be pled by establishing motive and opportunity to commit fraud, which cannot by themselves "serve as an independent route to scienter," *Institutional Inv'rs Grp.*, 564 F.3d  at 277, and by setting forth circumstantial evidence of either conscious or reckless behavior.  *Id.* at 267-69.  To demonstrate motive, plaintiffs must show, for example, that the defendant "benefitted in a concrete and personal way from the purported fraud" or "engaged in deliberately illegal behavior."  *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 549 (D.N.J. 2010) (citations omitted).  If plaintiffs allege only circumstantial evidence of intent or recklessness, without any evidence of motive and opportunity, "the strength of the circumstantial allegations must be even greater."  *Nat'l Junior Baseball League* at 552 (citations omitted).  In evaluating a complaint, courts must consider "plausible nonculpable explanations for the defendant's conduct" against "inferences favoring the plaintiff."  *Tellabs*, 551 U.S. at 324.  To be "strong," an inference of scienter must be "at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 314.

11

Plaintiffs do not come close to alleging that Ms. Carro made any misstatements to investors with scienter.  The October 26 Statements concerned the Company's historical view of disclosure considerations relating to Philidor.  The Restatement (and the "improper conduct" that purportedly contributed to it) concerned an entirely separate issue – the timing of revenue recognition for certain Philidor sales.  Ms. Carro's alleged "improper conduct" related to the Restatement only and had no nexus whatsoever to the October 26 Statements.  It therefore cannot provide a basis for scienter.

In any event, neither the accounting errors that led to the Restatement nor the purportedly "improper conduct" that "contributed to" them suggests fraud.  Plaintiffs do not allege that Ms. Carro used inappropriate accounting practices to obtain a "concrete and personal benefit" from the alleged fraud, that she engaged in deliberately deceitful behavior, or that she turned a blind eye to obvious wrongdoing.  That is, there is no evidence of any intent to defraud investors.

### A.    None Of The Scienter Allegations Relate To The October 26 Statements

The PSLRA requires that plaintiffs establish a "strong inference that the defendant acted with the required state of mind" for "*each act or omission* alleged to violate this chapter."  15 U.S.C. § 78u–4(b)(2)(a) (emphasis added).  Simply put, the scienter allegation must correspond to the misstatement.  *See Winer Family Tr.*, 503 F.3d at 335 ("[S]cienter must be pleaded in regards to 'each act or omission' sufficient to support a strong inference that 'the defendant' acted with the required state of mind.") (quoting 15 U.S.C. § 78u-4(b)(2)); *Institutional Inv'rs Grp.*, 564 F.3d at 253 (same).

The Complaints fail to satisfy this basic requirement by mixing apples and oranges.  The Restatement (and the "improper conduct" that purportedly contributed to it) related to premature recognition of "approximately $58 million in net revenues relating to sales to Philidor" in late 2014.  Ex. 2.  The October 26 Statements had nothing to do with that matter.  They were, instead,

12

historical descriptions of why Valeant determined that Philidor did not need to be specifically disclosed in its financial statements.  *See* Section I(A), *supra*.  Nothing in the March 21 8-K (which referred to Ms. Carro's purportedly "improper conduct") remotely suggests that Ms. Carro provided incorrect information to investors at any time, including in the October 26 Statements, or that her allegedly "improper conduct" in any way related to the disclosure of Philidor.

Stated simply, the "improper conduct" and the Restatement concern the timing of revenue recognition, not whether Valeant should have specifically disclosed Philidor in its financial statements, which was the subject of the October 26 Statements.  Ms. Carro's conduct (improper or not) with respect to the timing of revenue recognition has no bearing on whether she knowingly or recklessly misled investors in the October 26 Statements.  Because plaintiffs' evidence of scienter "bears no apparent connection" to the alleged misrepresentation, the Complaints should be dismissed.  *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 595 (D.N.J. 2005).  *See also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) (upholding dismissal of complaint where the scienter allegations "cannot be connected directly to any misleading statement").

### B. The Company's Claim That Ms. Carro's "Improper Conduct" Contributed To Accounting Errors Does Not Establish A Strong Inference Of Scienter

Plaintiffs repeatedly refer to the Company's statement that the unspecified "improper conduct of the Company's former Chief Financial Officer and former Corporate Controller, which resulted in the provision of incorrect information to the [Audit] Committee and the Company's auditors, contributed to the misstatement of results . . . ."  Ex. 2.  Even if the Restatement related to the October 26 Statements, merely characterizing Ms. Carro's conduct as "improper," even when quoting the Company's own statement, without citing any other evidence

13

supporting an inference of scienter, is not sufficient for plaintiffs to meet the pleading burden

imposed by the PSLRA. *See In re Bio-Tech.* at 588 ("Simply asserting that Defendants

*improperly* capitalized certain . . . costs in financial statements . . . does not establish a strong

inference of scienter, even when those financial statements are later restated to expense the

formerly capitalized costs.") (emphasis added).

"Improper" has a number of definitions, several of which could be applicable here.

Merriam-Webster defines "improper" as, *inter alia*, "not correct," "not following rules of

acceptable behavior," "legally or morally wrong," "not suitable for the situation," or "not

appropriate."[9] Most of these definitions have nothing to do with fraud, but are instead consistent

with an innocent mistake or negligence. While some definitions could potentially be consistent

with fraudulent intent, plaintiffs allege no facts—no evidence of deliberate deception, intentional

wrongdoing, or extreme recklessness—that support their reliance on that term to divine a

fraudulent intent. "[A]mbiguities 'count against inferring scienter.'" *Institutional Inv'rs Grp.*,

564 F.3d at 268 (citing *Tellabs*, 551 U.S. at 326). Relying on nothing more than an ambiguous

adjective used to describe Ms. Carro's conduct, plaintiffs have not met their burden of

demonstrating an inference of scienter that is "at least as compelling as any opposing inference

one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

In any event, even if Ms. Carro's alleged contribution to an accounting error related to

the October 26 Statements (which it does not), it does not establish scienter. "[C]ourts have

---

[9]  Additional definitions include: "not in accord with fact, truth, or right procedure," "not
regularly or normally formed or not properly so called," "not suited to the circumstances, design,
or end," or "not in accord with propriety, modesty, good manners, or good taste." Merriam-
Webster, Definition of Improper, at http://www.merriam-webster.com/dictionary/improper. *See
also* Dictionary.com, Definition of Improper, at http://www.dictionary.com/browse/improper
(defining improper as "not proper; not strictly belonging, applicable, correct, etc.; erroneous; not
in accordance with propriety of behavior, manners, etc.; unsuitable or inappropriate, as for the
purpose or occasion; abnormal or irregular").

uniformly held that . . . GAAP violations do not create the requisite strong inference of scienter unless plaintiffs' complaint alleges 'more.'" *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 287 (D.N.J. 2007).  *See also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279–80 (3d Cir. 2006); *In re Alpharma Sec. Litig.*, 372 F.3d 137, 149-150 (3d Cir. 2004); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 712-13 (3d Cir.1996); *In re Bio-Tech.*, 380 F. Supp. 2d 574, 588 (D.N.J. 2005); *Nappier v. PricewaterhouseCoopers LLP*, 227 F.Supp.2d 263, 276 (D.N.J. 2002); *Messner v. USA Techs., Inc.*, 2016 WL 1466543, at *6 (E.D. Pa. Apr. 13, 2016). Specifically, "allegations of violations of GAAP must be accompanied by factual allegations of corresponding fraudulent intent."  *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429 (D.N.J. 1999) (citations omitted).

"[F]actual allegations of corresponding fraudulent intent" are wholly absent from these Complaints.  The Complaints allege no facts showing that Ms. Carro knew the accounting treatment was wrong, no facts indicating she intentionally declined to follow GAAP rules, and no facts demonstrating that she was severely reckless in providing information to the Company's auditors.  *See In re Bio-Tech.*, 380 F. Supp. 2d at 588-89 (holding that "particularized facts," beyond GAAP errors, demonstrating severe recklessness, such as evidence defendants acted "in spite of" their knowledge of proper accounting treatment, or declined to follow "simple" guidelines, were required to establish scienter); *In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *15 (D.N.J. Aug. 17, 2005) (holding that "Defendants' alleged GAAP violations and lack of understanding may provide evidence of corporate mismanagement" but not a cognizable securities fraud claim) (citations omitted).

The Complaints also allege that Ms. Carro was placed on "administrative leave" and eventually replaced.  *T. Rowe Price* Compl. ¶ 30; *Equity Trustees* Compl. ¶ 40; *Principal Funds*

15

Compl. ¶ 32; *BloombergSen* Compl. ¶ 31.  But the termination of an executive, even when closely preceded by accounting errors and accompanied by "extraordinary corporate punishment," (something not alleged here) constitutes, at most, a "piece to the scienter puzzle." *In re Intelligroup*, 527 F. Supp. 2d 262, 347 (citations omitted).  Absent specific allegations of fraudulent intent like deliberate accounting transgressions or "intentional ignorance of 'red flags,'" accounting errors and termination do not establish scienter.  *Id.* at 346-347.

### C.     The "Additional Indicia of Defendants' Scienter" Allegations Rely On Impermissible Assumptions

The only other scienter allegations pertinent to Ms. Carro are contained in the "Additional Indicia of Defendants' Scienter" section of the Complaints.  Over these lengthy sections, plaintiffs claim, *inter alia*, that each of the Executive Defendants was "personally aware of, designed, and implemented the deceptive practices," (*T. Rowe Price* Compl. ¶ 357; *Equity Trustees* Compl. ¶ 360; *Principal Funds* Compl ¶ 352; *BloombergSen* Compl. ¶ 346) and that all six must have known about "Valeant's materially misleading misstatements."  *T. Rowe Price* Compl. ¶ 366; *Equity Trustees* Compl. ¶ 369; *Principal Funds* Compl. ¶ 361; *BloombergSen* Compl. ¶ 355.

These unspecific allegations fail to establish scienter for Ms. Carro.  First, none relate specifically to the October 26 Statements.  *See* Section II(A), *supra*.  Second, given the Complaints' utter failure to set forth particular facts relating to what she actually knew or recklessly avoided knowing, the only possible basis plaintiffs have for inferring that Ms. Carro must have known anything is that she was the Corporate Controller.  That is "precisely the type[] of inference[] which courts, on numerous occasions, have determined to be inadequate . . . ."  *In re Advanta*, 180 F.3d at 539 (citations omitted).

In case after case, courts in this District have warned litigants that "allegations that a securities-fraud defendant, because of his position within the company, must have known a statement was false or misleading are inadequate to meet the PSLRA pleading standard." *In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425, 470 (D.N.J. 2000). *See also Alpharma*, 372 F.3d at 149 ("[A]llegations [that] rest primarily upon the premise that the individual defendants are liable simply by virtue of the positions they hold within the company . . . do not satisfy the scienter requirement.") (quotations omitted); *Kennilworth Partners*, 59 F. Supp. 2d at 428 ("[P]laintiffs ask the Court to infer scienter based on the defendants' positions as directors or officers . . . . This general base has been rejected by numerous courts. . . . [Such allegations] pass[] muster only when taken together with . . . more specific allegations linking their positions to their knowledge.") (quotations omitted). The "Additional Indicia of Defendants' Scienter" allegations are all premised on this impermissible assumption, and therefore add nothing to the otherwise insufficient scienter allegations.[10]

---

[10] Ms. Carro also joins in the arguments made in Section III of the Omnibus Memorandum in Support of Valeant, Rosiello, and Kellen's Partial Motions to Dismiss Plaintiffs' Complaints.

ME1 25054218v.1

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaints as to Tanya Carro should be dismissed.


Dated: June 16, 2017

By:  *s/ Richard Hernandez*
      Richard Hernandez

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone: (973) 848-8615
Facsimile:  (973) 297-6615

William J. Schwartz
Laura Grossfield Birger
COOLEY LLP
1114 Avenue of the Americas
New York, New York  10036
Phone:  (212) 479-6000
Facsimile: (212) 479-6275
*Admitted Pro Hac Vice*

*Attorneys for Defendant Tanya Carro*

18