**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| T. ROWE PRICE GROWTH STOCK FUND, INC., et al., <br><br>           Plaintiffs, <br><br>    v. <br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br>           Defendants. | **Civil Action No. 16-CV-5034(MAS)(LHG)** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> **Motion Day: September 5, 2017** |

*Captions continue on the next page*

---

**OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF
VALEANT, ROBERT ROSIELLO, AND ARI S. KELLEN'S PARTIAL MOTIONS TO
DISMISS PLAINTIFFS' COMPLAINTS**

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Jonathan K. Youngwood (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc., Robert Rosiello, and Ari S. Kellen.*

| | |
|---|---|
| EQUITY TRUSTEES LIMITED AS RESPONSIBLE ENTITY FOR T. ROWE PRICE GLOBAL EQUITY FUND, et al., <br><br>             Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br>             Defendants. | **Civil Action No. 16-CV-6127(MAS)(LHG)** |
| PRINCIPAL FUNDS, INC., et al., <br><br>             Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br>             Defendants. | **Civil Action No. 16-CV-6128(MAS)(LHG)** |
| BLOOMBERGSEN PARTNERS FUND LP, et al., <br><br>             Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br>             Defendants. | **Civil Action No. 16-CV-7212(MAS)(LHG)** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................ 2

ARGUMENT ...................................................................................................... 7

I.   PLAINTIFFS' SECTION 18 CLAIMS FAIL IN ALL FOUR INDIVIDUAL
     ACTIONS ................................................................................................ 7

     A.   Plaintiffs In All Four Actions Fail To Meet Section 18's Stringent
          Standard For Pleading Reliance ........................................................ 7

     B.   The *BloombergSen* Plaintiffs Assert Claims Barred By Section 18's
          Statute Of Repose .......................................................................... 11

II.  PLAINTIFFS IN ALL FOUR INDIVIDUAL ACTIONS CANNOT RELY
     ON THE "FRAUD ON THE MARKET" PRESUMPTION FOR
     PURCHASES MADE AFTER OCTOBER 30, 2015 ................................ 12

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Basic v. Levinson*,
   485 U.S. 224 (1988) ................................................................................... 13

*CTS Corp. v. Waldburger*,
   134 S. Ct. 2175 (2014) ............................................................................... 11

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
   817 F.3d 393 (2d Cir. 2016) ...................................................................... 12

*Dexia SA/NV v. Deutsche Bank AG*,
   No. Civ. 11-5672, 2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) ................. 10

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ..................................................................................... 7

*Gannon v. Continental Ins. Co.*,
   920 F. Supp. 566 (D.N.J. 1996) ............................................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ............................................................................... 12

*Howard v. Everex Sys.*,
   228 F.3d 1057 (9th Cir. 2000) ..................................................................... 8

*In re Able Labs. Sec. Litig.*,
   No. Civ. 05-2681, 2008 WL 1967509 (D.N.J. Mar. 24, 2008) ............... 11

*In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. 2014) .................................................. 8, 9

*In re Discovery Labs. Sec. Litig.*,
   No. Civ. 06-1820, 2006 WL 3227767 (E.D. Pa. Nov. 1, 2006). ...... 14, 15

*In re Donald J. Trump Casino Sec. Litig.*,
   793 F. Supp. 543 (D.N.J. 1992) ............................................................... 10

*In re Genentech, Inc. Sec. Litig.*,
   No. Civ. 88-4038, 1989 WL 106834 (N.D. Cal. July 7, 1989) ................. 8

*In re MDC Holdings Sec. Litig.*,
   754 F. Supp. 785 (S.D. Cal. 1990) ............................................................. 8

ii

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005).................................................................... 15

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010)...................................................... 13

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002).................................................................... 2

*In re Stac Electronics Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .................................................................. 13

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)................................................................. 7, 8

*Klawonn v. YA Glob. Invs., L.P.*,
    No. Civ. 10-2108, 2016 WL 5923435 (D.N.J. May 6, 2016) ................... 11

*LLDVF, L.P. v. Dinicola*,
    No. Civ. 09-1280, 2010 WL 3210613 (D.N.J. Aug. 12, 2010) ................... 7

*Lovallo v. Pacira Pharm., Inc.*,
    No. Civ. 14-6172, 2015 WL 7300492 (D.N.J. Nov. 18, 2015) ........... 14, 15

*Musick, Peeler & Garrett v. Employers Ins. of Wausau*,
    508 U.S. 286 (1993)................................................................................... 7

*Oaktree Capital Mgmt., L.P. v. KPMG*,
    963 F. Supp. 2d 1064 (D. Nev. 2013) ...................................................... 11

*Pension Comm. v. Banc of Am. Sec., LLC*,
    592 F. Supp. 2d 608 (S.D.N.Y. 2009)...................................................... 11

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000)........................................................ 13, 14, 15

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014)....................................... 7, 8, 9, 10

*Wallace v. Systems & Computer Technology Corp.*,
    No. Civ. 95-6303, 1997 WL 602808 (E.D. Pa. Sept. 23, 1997) ............... 13

*White v. H&R Block, Inc.*,
    No. Civ. 02-8965, 2004 WL 1698628 (S.D.N.Y. July 28, 2004) ............ 13

*Witriol v. Conexant Sys., Inc.*,
    No. Civ. 04-6219, 2006 WL 3511155 (D.N.J. Dec. 4, 2006).................... 8

*WM High Yield Fund v. O'Hanlon*,
   No. Civ. 04-3423, 2005 WL 6788446 (E.D. Pa. May 13, 2005) ............................................. 11

**Statutes**

15 U.S.C. § 78r ................................................................................................................... 7, 11

28 U.S.C. § 1658(b) ................................................................................................................. 12

**Other Authorities**

2 Thomas Lee Hazen,
   *The Law of Securities Regulation* § 13.5B (3d ed. 1995) ......................................................... 14

## PRELIMINARY STATEMENT

While the Complaints in these four individual actions—*T. Rowe Price*, *Equity Trustees*, *Principal Funds*, and *BloombergSen*—largely overlap with allegations made in the securities class action currently pending before the Court (the "Class Action"), Defendants file these Motions to seek dismissal of several claims based on additional allegations and claims not at issue in the Class Action, for the following two reasons.[1]

**Section 18:** With respect to Plaintiffs' claims under Section 18 of the Exchange Act— claims not asserted in the Class Action—Plaintiffs in all four individual actions have not satisfied Section 18's strict standard for pleading reliance, which requires Plaintiffs to specify how each of their purchases were made in reliance on specific statements in Valeant's SEC filings. Rather, the Complaints simply list years-long date ranges during which purchases were allegedly made, without specifying which purchases were made in reliance on which statements in which filings. Moreover, beyond the failure to provide the required specificity, Plaintiffs in the *BloombergSen* action allege that they purchased Valeant securities **before** the earliest SEC filing at issue in that case, making any reliance allegations impossible. The Section 18 claim in the *BloombergSen* action also fails because Section 18's statute of repose prohibits Plaintiffs from asserting claims in connection with purchases made more than three years before an action is filed.

**Purchases After October 2015:** As the Supreme Court has held, plaintiffs bringing securities fraud claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 may only invoke the "fraud on the market" theory to plead reliance to the extent that they "traded the stock between the time the misrepresentations were made and when the truth was

---

[1] Plaintiffs' core legal theory is indistinguishable from the Class Action's, and accordingly, Defendants will not repeat any arguments already addressed by this Court's April 28, 2017 Memorandum Opinion.

revealed." Here, the Complaints demonstrate that Valeant's alleged omissions were fully disclosed to the market by the end of October 2015. Nevertheless, Plaintiffs seek to recover damages in connection with purchases that occurred between November 2015 and February 2016 (*T. Rowe Price*, *Equity Trustees*, and *Principal Funds*), and between November 2015 and August 2016 (*BloombergSen*). Third Circuit precedent bars sophisticated investors like Plaintiffs—some of the largest investment firms in the world—from suing to recover for losses on securities purchased after an alleged fraud is disclosed. Thus, Plaintiffs' securities fraud claims should exclude the post-October 2015 purchases.

*     *     *

For these reasons, as well as those set forth below, Plaintiffs' Section 18 claims and claims related to purchases after October 2015 should be dismissed with prejudice.[2]

## BACKGROUND[3]

The plaintiffs in these four actions are sophisticated investors who, combined, made over 2,400 purchases of Valeant securities between January 2013 and August 2016.

---

[2] Additionally, Counts VII and VIII of the *Equity Trustees* and *Principal Funds* complaints assert claims under Sections 12(a)(2) and 15 of the Securities Act premised on purportedly defective disclosures in the offering documents for four Valeant note offerings. Pursuant to a stipulation and proposed order, Plaintiffs have agreed to dismiss those claims without prejudice, and the Parties have agreed that all arguments raised by the parties in the Class Action on this issue shall be treated as if such arguments were raised during briefing on Defendants' motions to dismiss in these actions. *Equity Trustees* ECF No. 34 (June 16, 2017 stipulation and proposed order); *Principal Funds* ECF No. 33 (June 16, 2017 stipulation and proposed order).

[3] The background herein is drawn from the allegations in the Complaints, which are accepted as true for purposes of these motions to dismiss only, and from other documents properly considered on a motion to dismiss. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). For ease of reference, citations to Plaintiffs' allegations throughout generally refer only to the *Equity Trustees* Complaint. Unless otherwise noted, the Complaints in the three other actions contain the same allegations.

Plaintiffs in these actions are guided by investment advisers with assets under management ranging from one billion to hundreds of billions of dollars.  For example, 42 Plaintiffs across three of these actions are advised by T. Rowe Price Associates, Inc.  (*T. Rowe Price* Compl. ¶¶ 22, 23, 475; *Equity Trustees* Compl. ¶¶ 22–31; *Principal Funds* Compl. ¶¶ 22-24, 470.)  With over $810 billion in assets under management, T. Rowe Price Associates, Inc.'s parent T. Rowe Price Group, Inc. is one of the largest and most sophisticated investment firms in the world.  *See* Ex. 1 (T. Rowe Price Group Inc. 2016 10-K) at 2.[4] The only *Equity Trustees* plaintiff not advised by T. Rowe Price Associates, Teacher Retirement System of Texas, manages its own $128.5 billion of assets. (*Equity Trustees* Compl. ¶ 32.)[5]

Plaintiffs allege that Defendants—Valeant and its former executives J. Michael Pearson, Howard Schiller, Robert Rosiello, Deborah Jorn, Ari Kellen, and Tanya Carro—(1) failed to disclose that much of Valeant's growth was based on price increases and was therefore not "organic" and, (2) concealed material facts concerning Valeant's relationship with Philidor. (*Equity Trustees* Compl. ¶152.)  Plaintiffs further allege that Defendants artificially inflated Valeant's earnings as part of their concealment of Valeant's relationship with Philidor.

On these Motions, Defendants will not repeat the underlying factual allegations that were essentially addressed by this Court in its April 28, 2017 Memorandum Opinion in the Class Action.  Rather, Defendants note only those pertinent to the distinct arguments it makes with respect to Section 18 and purchases made after October 2015.

---

[4] References to Ex. __ refer to Exhibits to the Declaration of Daniel J. Stujenske, dated June 16, 2017.

[5] *See also T. Rowe Price* Compl. ¶ 23; Ex. 2 (Alleghany Corp., 2016 10-K) at 33 (total assets of $23.8 billion); *BloombergSen* Compl. ¶ 464; Ex. 3 (BloombergSen, Inc. Form 13F-HR) at 2 (holdings of $1.19 billion).

Plaintiffs allege that Valeant "concealed and misrepresented" "extraordinary price gouging" and "the extent to which the Company's growth was dependent on price increases." (*Equity Trustees* Compl. ¶ 12.)  Plaintiffs concede, however, that an October 4, 2015 *New York Times* article "called into doubt" whether "Valeant was well-positioned for growth even without price increases" and described "Valeant's dependency on price gouging."  (*Equity Trustees* Compl. ¶ 265.)  That article reported that "Valeant's habit of buying up existing drugs and raising prices aggressively, rather than trying to develop new drugs, has also drawn the ire of lawmakers and helped stoke public outrage."  (Ex. 4 (Andrew Pollack & Sabrina Tavernise, *Valeant's Drug Price Strategy Enriches It, but Infuriates Patients and Lawmakers*, N.Y. TIMES, Oct. 4, 2015).)  The summary of Valeant's business practices in that article was not the result of a deep investigation into Valeant—it was simply based on a review of Valeant's public statements.  For example, the article clarifies that Valeant's CEO had discussed the importance of Valeant's pricing decisions to shareholders as early as April of 2015:

> Mr. Pearson, a former McKinsey & Company consultant, has said he has a duty to shareholders to wring the maximum profit out of each drug. And in some cases old neglected drugs sell for far less than newer drugs for the same diseases.  If "products are sort of mispriced and there's an opportunity, we will act appropriately in terms of doing what I assume our shareholders would like us to do," he told analysts in a conference call in April.

(*Id.* at 3.)  Additionally, the *New York Times*' conclusion that Valeant was "known" for its controversial practices was premised in part on Valeant's "regulatory filing for the second quarter [in which] Valeant said that its growth in the United States and other developed markets ***'was driven primarily by price' not by increased volume*.**"  (*Id.* at 6.)  This was not a new disclosure; rather, it was a disclosure that Valeant had made to investors ***every quarter between***

*April 2013 and June 2015*.[6]  In other words, the *New York Times* understood Valeant's

disclosures, which were made as early as Valeant's 2013 10-K, as unambiguously informing

investors of the sources of Valeant's growth.

The Complaints also allege that Defendants "conceal[ed] Valeant's relationship with

Philidor." (*Equity Trustees* Compl. ¶ 109.)  Plaintiffs further allege that Defendants artificially

inflated Valeant's earnings as part of their concealment of Valeant's relationship with Philidor.

(*Equity Trustees* Compl. ¶ 135.)  The Complaints also make clear, however, that this information

was announced no later than October 2015.

On October 19, 2015, for example, Valeant announced third quarter earnings and

disclosed details about its relationship with Philidor, including Valeant's option to purchase

Philidor and the consolidation of Philidor's financials.  (*Equity Trustees* Compl. ¶¶ 268–69.)  On

October 26, 2015, Valeant filed its Form 10-Q for the third quarter of 2015 and released a

comprehensive 90-page PowerPoint presentation on Philidor.  (*Equity Trustees* Compl.  ¶¶ 281–

82; Ex. 14 (Valeant 10-Q 3Q 2015) at 38; Ex. 15 (Oct. 26, 2015 Presentation).)  Valeant

disclosed Philidor's limited contribution to net revenue—less than 1% before 2015 and

approximately 6% of net revenue for the first nine months of 2015 *combined* (peaking at 7% of

net revenue only in the third quarter of 2015). (Ex. 16 (Valeant 10-K 2015) at 44; (Ex. 14

Valeant 10-Q 3Q 2015) at 13.)  Valeant also announced the establishment of an ad hoc

committee supported by independent advisors "to review allegations related to the Company's

business relationship with Philidor and related matters."  (Ex. 14 (Valeant 10-Q 3Q 2015) at 38.)

---

[6] *See* Ex. 5 (Valeant 2013 10-K) at 35; Ex. 6 (Valeant 10-Q 2Q 2013) at 42; Ex. 7 (Valeant 10-Q 3Q 2013) at 53; Ex. 8 (Valeant 10-Q 1Q 2014) at 38; Ex. 9 (Valeant 10-Q 2Q 2014) at 44–45; Ex. 10 (Valeant 10-Q 3Q 2014) at 47; Ex. 11 (Valeant 2014 10-K) at 34; Ex. 12 (Valeant 10-Q 1Q 2015) at 34; Ex. 13 (Valeant 10-Q 2Q 2015) at 39.

Allegations had been made several days earlier by Citron Research ("Citron")—a short-seller with a financial interest in harming investors like Plaintiffs by causing Valeant's stock to drop. Citron had issued a report accusing Valeant of using Philidor to "create[] an entire network of phantom pharmacies" and book "phantom sales or stuff the channel, and avoid scrutiny from the auditors." (*Equity Trustees* Compl. ¶ 276; Ex. 17 (Citron Report) at 3, 5.)  These allegations of fraudulent accounting were repeated throughout the financial press. *See, e.g.*, Ex. 18 (Antoine Gara, *Valeant Plunges 30% After Short Seller Citron Research Makes Fraud Allegation*, FORBES (Oct. 21, 2015)).

On October 28, 2015, moreover, the *Wall Street Journal* reported on Philidor's purported sales tactics, calling them "highly questionable practices."  (Ex. 19 Jonathan Rockoff and Jeanne Whalen, *Pharmacy's Sales Tactics Disclosed*, WALL ST. J., Oct. 28, 2015.)[7]  Within a day, the country's three largest pharmacy benefit managers announced that they would no longer work with Philidor. (*Equity Trustees* Compl. ¶¶ 289–290.)  On October 30, 2015, Valeant also announced that it was severing ties with Philidor.  (*Equity Trustees* Compl. ¶ 288; Ex. 21 (Valeant, Press Release (Oct. 30, 2015.)).)  In a statement released by Valeant, Pearson explained that "the newest allegations about activities at Philidor raise additional questions about the company's business practices . . . .  We have lost confidence in Philidor's ability to continue in a manner that is acceptable to Valeant and the patients and doctors we serve."  (*Id.*)

---

[7] *See also Equity Trustees* Compl. ¶ 287 ("[O]n October 28, 2015, *Bloomberg* reported that an internal Philidor training manual showed that Philidor relied on 'back door' tactics to boost payments and 'instructed employees to submit claims under different pharmacy identification numbers if an insurer rejected Philidor's claim – to essentially shop around for one that would be accepted.'"); Ex. 20 (Caroline Chen & Ben Elgin, *Valeant's Philidor Used 'Back Door' Tactics to Boost Payments*, BLOOMBERG, Oct. 28, 2015).

After this information reached the market, plaintiffs in each of these actions allege that they purchased Valeant stock for ten more months.  (*T. Rowe Price* Compl. at 1; *Equity Trustees* Compl. at 1; *Principal Funds* Compl. at 1; *BloombergSen* Compl. at 1.)

## ARGUMENT

## I.     PLAINTIFFS' SECTION 18 CLAIMS FAIL IN ALL FOUR INDIVIDUAL ACTIONS

Count II of each Complaint asserts a claim under Section 18 of the Exchange Act. Section 18 is "a narrow and seldom invoked provision." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd*., 33 F. Supp. 3d 401, 439 (S.D.N.Y. 2014).  It "creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the SEC pursuant to the Exchange Act." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006) (citing 15 U.S.C. § 78r(a)).  The PSLRA's heightened pleading requirements apply to Section 18.  *See LLDVF, L.P. v. Dinicola*, No. Civ. 09-1280, 2010 WL 3210613, at *3 (D.N.J. Aug. 12, 2010).[8]

### A.     Plaintiffs In All Four Actions Fail To Meet Section 18's Stringent Standard For Pleading Reliance

On a Section 18 claim, courts require "'a purchaser's *actual reliance* on the fraudulent statement under § 18(a), as opposed to the constructive reliance, or fraud-on-the-market theory available under § 10(b).'"  *Suprema*, 438 F.3d at 283 (quoting *Howard v. Everex Sys.*, 228 F.3d

---

[8] Despite Plaintiffs' assertions that they "expressly disclaim any allegation of fraud or intentional misconduct," *Equity Trustees* Compl. ¶ 505, Section 18 liability can ultimately only be imposed on "defendants who have violated the securities law *with scienter*." *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 296 (1993) (emphasis added).  Thus, although plaintiffs asserting a Section 18 claim need not plead scienter, *Suprema*, 438 F.3d at 256, 283, a defendant's "good faith is an absolute defense" to Section 18 liability. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 200 (1976) (citing 15 U.S.C. § 78r).

1057, 1063 (9th Cir. 2000)).  Unlike Section 10(b)'s standard for pleading reliance, "Section 18 requires that plaintiffs allege *actual* reliance on specific statements in covered Exchange Act filings."  *Special Situations Fund III*, 33 F. Supp. at 440 (emphasis added) (citation omitted). That critical difference exists because "the courts, not Congress, created the implied private cause of action under Rule 10b-5" and have therefore "been free to redefine [the reliance] requirement in order to promote Rule 10b-5's objectives." *In re Genentech, Inc. Sec. Litig.*, No. Civ. 88-4038, 1989 WL 106834, at *5 (N.D. Cal. July 7, 1989); *see also In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 798 (S.D. Cal. 1990) ("In contrast [with § 10(b)], Congress created the express reliance requirement in § 18.  Courts have consistently interpreted the section to require actual reliance.").

Applying *Suprema*, courts dismiss Section 18 claims where "the allegations of reliance are cursory and general, lacking the specificity that the Third Circuit [in *Suprema*] requires to state a claim . . . [and] fail to plead facts probative of actual reliance on specific false statements."  *Witriol v. Conexant Sys., Inc.*, No. Civ. 04-6219, 2006 WL 3511155, at *7 (D.N.J. Dec. 4, 2006); *see also Special Situations Fund III*, 33 F. Supp. 3d at 444 (dismissing Section 18 claims where plaintiffs failed to "identify . . . *specific transactions* that ensued as a result of Plaintiffs' purported 'eyeball' reliance on [the filings]."); *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 309–10 (S.D.N.Y. 2014) (dismissing Section 18 claims where plaintiffs failed to "link [their] review of any particular statements in [the 10-K] or any other document to any actual purchases of Bear Stearns securities *and [did] not identify a particular transaction that it allegedly made in reliance on the document or any other document*.") (emphasis added).

Here, Plaintiffs do not even attempt to satisfy this standard; three of the Complaints—*T. Rowe Price*, *Equity Trustees*, and *Principal Funds*—simply list approximately year-long periods and estimate the number of purchases made, without specifying which purchases were made in reliance on which statements in which filings, let alone how many purchases were made or when.  For example, the *T. Rowe Price* Complaint refers obliquely to "over 600" purchases of Valeant common stock between February 28, 2014 and February 24, 2015 and "over" 857 purchases between February 25, 2015 and February 22, 2016.  (*T. Rowe Price* Compl. ¶¶ 478, 482.)[9]  The *BloombergSen* Complaint goes further, alleging "over 15" purchases made over nearly four years.  (*BloombergSen* Compl. ¶ 467.)  Section 18 allegations where a plaintiff "does not identify a particular transaction that it allegedly made" in reliance on filed documents and instead are based on purchases that "occurred over a year-long period" do not state a claim.  *In re Bear Stearns*, 995 F. Supp. 2d at 309; *see also Special Situations Fund III*, 33 F. Supp. 2d at 444 (failure "to identify any specific transactions that ensued as a result of Plaintiffs' purported 'eyeball' reliance" is "fatal to the claim").  Indeed, the Complaints' blanket allegations that, for example, "[o]n or about February 28, 2014," Plaintiffs' portfolio managers and analysts "read and reviewed the 2013 10-K" and then "purchased Valeant common stock on over 220 separate occasions from February 28, 2014 through February 24, 2015" (*Equity Trustees* Compl. ¶ 481) simply thumb their noses at the specificity requirement, and are exactly the type of "generic" allegations rejected by courts.  *See In re Bear Stearns*, 995 F. Supp. 2d at 309 ("[Plaintiff's] generic response that 'every . . . purchase of Bear securities was in reliance on the specific misrepresentations and omissions identified in the Complaint' is not sufficiently

---

[9] *Equity Trustees* refers to "over" 728 purchases between February 28, 2014 and February 22, 2016.  (*Equity Trustees* Compl. ¶¶ 481, 484, 488).  *Principal Funds* alleges "over" 400 purchases made during that time.  (*Principal Funds* Compl. ¶ 473.)

particularized.").  The generic nature of the allegations in these cases is highlighted by the fact that each of the Complaints assert identical boilerplate reliance allegations differentiated only by the alleged purchase dates.  That is fatal to the Section 18 claims.  *See Special Situations Fund III*, 33 F. Supp. 3d at 444.

Indeed, the *BloombergSen* Complaint's blanket reliance allegations are not just implausible—they are ***impossible***.  The Complaint alleges that "[p]rior to purchasing Valeant common stock, Plaintiffs read and relied upon Valeant's 2013 10-K and 2014 10-K[.]" (*BloombergSen* Compl. ¶ 481.)  Yet the *BloombergSen* Plaintiffs allege purchases made throughout the entire "Relevant Period"—January 2013 to August 2016—fourteen months of which predate February 28, 2014, the date Valeant's 2013 10-K was filed with the SEC.[10]  Even absent Section 18's uniquely strict reliance pleading standard, Courts routinely dismiss securities claims when the purchases occurred prior to the availability of the SEC filings allegedly relied upon.  *See*, *e.g.*, *Gannon v. Continental Ins. Co.*, 920 F. Supp. 566, 578 (D.N.J. 1996) (dismissing 10b-5 claim as to shares purchased prior to annual report's filing because plaintiff could not have relied on the report when making such purchases) (citing *In re Donald J. Trump Casino Sec. Litig.*, 793 F. Supp. 543, 565 (D.N.J. 1992), *aff'd*, 7 F.3d 357 (3d Cir. 1993)); *Dexia SA/NV v. Deutsche Bank AG*, No. Civ. 11-5672, 2013 WL 98063, at *5 (S.D.N.Y. Jan. 4, 2013) (holding that plaintiffs cannot plead reliance on offering documents when they invested "before the [offering documents] were even issued"); *Pension Comm. v. Banc of Am. Sec.*, *LLC*, 592 F.

---

[10] Furthermore, while the *BloombergSen* plaintiffs claim "eyeball" reliance on Valeant's 2013 10-K, *BloombergSen* Compl. ¶ 481, elsewhere in the Complaint they allege only that Plaintiffs' investment advisors read and relied upon Valeant's 2014 10-K, which was filed on February 25, 2015, *BloombergSen* Compl. ¶¶ 466–67.

Supp. 2d 608, 629 & n.144 (S.D.N.Y. 2009) (holding that plaintiffs cannot establish reliance on statements not received before investment).

> **B.      The *BloombergSen* Plaintiffs Assert Claims Barred By Section 18's Statute Of Repose**

Section 18 contains a three-year statute of repose. *See* 15 U.S.C. § 78r(c) (Section 18 claims must be filed "within three years after such cause of action accrued."). A statute of repose "provides a fresh start or freedom from liability" by effecting "a legislative judgment that a defendant should be free from liability after [a] legislatively determined period of time." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2179, 2183 (2014). Section 18 causes of action accrue at the time the securities are purchased or sold. Accordingly, any Section 18 claims for a purchase made more than three years prior to a Complaints' filing are barred by the statute of repose. *See Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1092 (D. Nev. 2013) (dismissing claims with prejudice); *see also id.* at 1082 n.14.

Courts in the Third Circuit have unanimously rejected an argument that a longer statute of repose included in the Sarbanes-Oxley Act applies to Section 18 claims. *See In re Able Labs. Sec. Litig.*, No. Civ. 05-2681, 2008 WL 1967509, at *23 (D.N.J. Mar. 24, 2008) ("This Court is persuaded by courts holding that the SOX statute of limitations is inapplicable to claims under § 18 of the Exchange Act."); *WM High Yield Fund v. O'Hanlon*, No. Civ. 04-3423, 2005 WL 6788446, at *12 (E.D. Pa. May 13, 2005) ("Because Section 18 does not require proof of fraud, Sarbanes-Oxley does not extend the statute of limitations and Plaintiffs' Section 18 claims . . . are barred by the applicable three year limitations period."); *Klawonn v. YA Glob. Invs., L.P.*, No. Civ. 10-2108, 2016 WL 5923435, at *7 (D.N.J. May 6, 2016) ("Section 18 [claims] must be brought within one year after discovery of the facts underlying the violation, and in any event

within three years after the violation.").[11]  Thus, because the *BloombergSen* Complaint alleges purchases made beginning in January 2013 (in reliance on Valeant's 2014 10-K), Section 18 claims in connection with purchases of Valeant securities that occurred more than three years prior to the filing of the action must be dismissed.  (*BloombergSen* Compl. ¶ 467.)

## II.    PLAINTIFFS IN ALL FOUR INDIVIDUAL ACTIONS CANNOT RELY ON THE "FRAUD ON THE MARKET" PRESUMPTION FOR PURCHASES MADE AFTER OCTOBER 30, 2015

Count I of each of the Complaints is overbroad, even in light of the Court's April 28, 2017 Memorandum Opinion in the Class Action.  Reliance is an element of securities fraud claims, and these Plaintiffs "intend to rely upon the presumption of reliance established by the fraud-on-the-market doctrine."  (*Equity Trustees* Compl. ¶ 474.)  Critically, that doctrine is only applicable to the extent that Plaintiffs "traded the stock between the time the misrepresentations were made and when the truth was revealed."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014); *see also Equity Trustees* Compl. ¶ 474(e).[12]  The Complaints, Valeant's filings, and news reports make clear that the "truth" was revealed by the end of October 2015.

The fraud on the market theory's premise—that a stock's market price reflects "'*all* publicly available information'"—demonstrates that the market must also "have absorbed all the information available from the articles published in newspapers from coast to coast and the press releases and SEC filings of [Valeant]."  *White v. H&R Block, Inc.*, No. Civ. 02-8965, 2004 WL

---

[11] The Second Circuit, on the other hand, has held that Section 18 claims are subject to a five-year statute of repose pursuant to the Sarbanes-Oxley Act's extension of the statue of repose for "certain 'private right[s] of action that involve[] a claim of fraud, deceit, manipulation, or contrivance.'"  *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 398, 405 (2d Cir. 2016) (quoting 28 U.S.C. § 1658(b)).

[12] Valeant reserves the right to challenge all Plaintiffs' general reliance on the "fraud on the market" theory at a later stage of this case.

1698628, at *13 (S.D.N.Y. July 28, 2004) (quoting *Basic v. Levinson*, 485 U.S. 224, 246 (1988)).

Thus, a "truth on the market defense can . . . be granted on a motion to dismiss where the

company's SEC filings or other documents disclose the very information necessary to make their

public statements not misleading." *Wallace v. Systems & Computer Technology Corp.*, No. Civ.

95-6303, 1997 WL 602808, at *10 (E.D. Pa. Sept. 23, 1997) (citing *In re Stac Electronics Sec.*

*Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996)); *see also In re Merrill Lynch Auction Rate Sec. Litig.*,

704 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) ("The presumption of reliance created by the fraud on

the market theory can be rebutted . . . [w]hen information 'credibly enters the market and

dissipates the effects of the misstatements[.]'") (quoting *Basic*, 485 U.S. at 248).

The Third Circuit's decision in *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir.

2000), is on point.  In *Semerenko*, defendants were accused of misrepresenting their financial

condition in connection with a proposed acquisition.  Critically, in the middle of the proposed

class period, defendants disclosed that due to the discovery of "potential accounting

irregularities" a committee of the company's board of directors had engaged outside advisors "to

perform an independent investigation." *Id.* at 170.  That investigation later resulted in the

issuance of a restatement by the company. *Id.* at 171.  Parsing the allegations, the Third Circuit

ruled that although plaintiffs had sufficiently pled reliance *before* the announcement of the

independent investigation, the announcement "immediately rendered the prior misrepresentations

. . . thereafter immaterial as a matter of law," and neither the market nor putative class therefore

could have reasonably relied upon prior misstatements. *Id.* at 181.

Cases in the Third Circuit decided after *Semerenko* have also found that the truth on the

market defense is appropriate on a motion to dismiss.  In *Lovallo v. Pacira Pharm., Inc.*, the

defendant pharmaceutical company was accused of making materially misleading disclosures

concerning its marketing of a drug for non-FDA approved uses.  No. Civ. 14-6172, 2015 WL 7300492, at *2–3 (D.N.J. Nov. 18, 2015).  Judge Walls dismissed the claims, finding that although there were misstatements and omissions, the pharmaceutical company's later disclosures "demonstrate[d] that true information was transmitted to the public with the degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by [any prior] representations."  *Id.* at *9–10.  Specifically, plaintiffs' claims ceased to be viable once the company's securities filings explained both the scope of the FDA's approval and the drug's uses.  The court rejected plaintiffs' arguments that dismissal was inappropriate because the "true disclosures [were] buried among other statements," finding that investors nevertheless should have been aware of them.  *Id.*  Likewise, in *In re Discovery Labs. Sec. Litig.*, plaintiffs alleged that a biotechnology company failed to adequately disclose in its SEC filings that its manufacturing partner (which it later acquired) had a history of compliance problems. No. Civ. 06-1820, 2006 WL 3227767, at *1–2 (E.D. Pa. Nov. 1, 2006).  The court dismissed plaintiffs' claims based on the "truth on the market defense," finding that although "at least some of plaintiffs' claims allege misleading omissions," there was "sufficient public disclosure to . . . invoke an assumption that the stock price reflected any adjustment in corporate value [that defendant's manufacturing] relationship caused."  *Id.* at *10–11.  The Court reached this holding even though it was the FDA, not defendant itself, which publicized the compliance problems. *Id.*[13]

---

[13] The fact that *Lovallo* and *In re Discovery Labs* discuss the truth on the market defense in the context of materiality and not reliance is a distinction without a difference.  *See Semerenko*, 223 F.3d at 180 ("The reliance requirement is a corollary of materiality.") (quoting 2 Thomas Lee Hazen, *The Law of Securities Regulation* § 13.5B, at 527 (3d ed. 1995)).

This precedent—all of which granted dismissal on the pleadings—reflects the fact that "as compared to the other courts of appeals, [the Third Circuit] has one of the clearest commitments to the efficient market hypothesis" underpinning the "fraud on the market" theory of reliance. *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 269 (3d Cir. 2005). Consistent with that precedent, this Court should find that the "truth was revealed" by no later than October 30, 2015. By that point, Valeant itself had disclosed, among other things, (1) its ties to Philidor, (2) that it was terminating its relationship with Philidor, (3) that it had lost confidence in Philidor's practices, and (4) that it was conducting an internal investigation of serious allegations concerning Philidor and Valeant's relationship and related accounting. (*Equity Trustees* Compl. ¶¶ 269, 288, 453; Ex. 21 (Valeant, Press Release (Oct. 30, 2015)); Ex. 22 (Valeant, Press Release (Oct. 30, 2015)).) Those announcements are directly analogous to the announcement that the Third Circuit found to foreclose reasonable reliance in *Semerenko*. Likewise, Valeant's pricing practices had been discussed at length in its public filings, and the media. This point is conceded in the Complaints' acknowledgements that the October 4, 2015 *New York Times* article (Ex. 4) described "Valeant's dependency on price gouging." (*Equity Trustees* Compl. ¶¶ 265, 445.) Nevertheless, Plaintiffs assert claims for securities purchased until August 2016.[14] The law within the Third Circuit does not permit recovery on these purchases made after the "truth" was revealed. *See Semerenko*, 223 F.3d at 181; *Lovallo*, 2015 WL 7300492, at *9–10; *In re Discovery Labs*, 2006 WL 3227767, at *11. Accordingly, Plaintiffs' claims under Count I must be found to exclude those purchases.

---

[14] *T. Rowe Price* Compl. at 1; *Equity Trustees* Compl. at 1; *Principal Funds* Compl. at 1; *BloombergSen* Compl. at 1.

## CONCLUSION

Defendants Valeant Pharmaceuticals International, Inc., Robert Rosiello, and Ari Kellen respectfully request that the scope of Count I in each of the actions be limited to exclude Plaintiffs' purchases of Valeant securities that occurred after October 2015.  Defendants Valeant Pharmaceuticals International, Inc. and Robert Rosiello further respectfully request that the scope of Count III in each of the actions be limited to exclude Plaintiffs' purchases of Valeant securities that occurred after October 2015.  Defendant Valeant Pharmaceuticals International, Inc. further respectfully requests that Count II of each of the Complaints be dismissed.

/s/  *Richard Hernandez*
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Jonathan K. Youngwood (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc., Robert Rosiello, and Ari S. Kellen.*

Dated: June 16, 2017

16