# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | Civil Action No. 15-7658 (MAS) (LHG) |

*Captions continue on the following pages*

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF A STAY

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Jonathan K. Youngwood (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc., Robert L. Rosiello, Ari S. Kellen, Ronald H. Farmer, Colleen Goggins, Robert A. Ingram, Anders Lönner, Theo Melas-Kyriazi, Robert N. Power, Norma Provencio, Katherine B. Stevenson and Jeffrey W. Ubben*

*(additional counsel listed on signature pages)*

| | |
|---|---|
| T. ROWE PRICE GROWTH STOCK FUND, INC., et al., | Civil Action No. 16-5034 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| EQUITY TRUSTEES LIMITED AS RESPONSIBLE ENTITY FOR T. ROWE PRICE GLOBAL EQUITY FUND, et al., | Civil Action No. 16-6127 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| PRINCIPAL FUNDS, INC., et al., | Civil Action No. 16-6128 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

BLOOMBERGSEN PARTNERS FUND LP, et al.,

                   Plaintiffs,

      v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,

                   Defendants.

Civil Action No. 16-7212 (MAS) (LHG)

---

PENTWATER EQUITY OPPORTUNITIES MASTER FUND LTD, et al.

                   Plaintiffs,

      v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,

                   Defendants.

Civil Action No. 17-7552 (MAS) (LHG)

---

DISCOVERY GLOBAL CITIZENS MASTER FUND, LTD., et al.,

                   Plaintiffs,

      v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,

                   Defendants.

Civil Action No. 16-7321 (MAS) (LHG)

| | |
|---|---|
| MSD TORCHLIGHT PARTNERS, L.P., et al., | Civil Action No. 16-7324 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| BLUEMOUNTAIN FOINAVEN MASTER FUND L.P., et al., | Civil Action No. 16-7328 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| INCLINE GLOBAL MASTER LP, et al., | Civil Action No. 16-7494 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| VALIC COMPANY I, et al., | Civil Action No. 16-7496 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| JANUS ASPEN SERIES, et al., | Civil Action No. 16-7497 (MAS) (LHG) |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| OKUMUS OPPORTUNISTIC VALUE FUND, LTD. | Civil Action No. 17-6513 (MAS) (LHG) |
| Plaintiff, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, | Civil Action No. 17-7625 (MAS) (LHG) |
| Plaintiff, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| THE BOEING COMPANY EMPLOYEE RETIREMENT PLANS MASTER TRUST AND THE BOEING COMPANY EMPLOYEE SAVINGS PLANS MASTER TRUST, | Civil Action No. 17-7636 (MAS) (LHG) |
| Plaintiffs, v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| LORD ABBETT INVESTMENT TRUST-LORD ABBETT SHORT DURATION INCOME FUND, et al., | Civil Action No. 17-6365 (MAS) (LHG) |
| Plaintiffs, v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................ 2

    A.     The Seventeen Cases Against Valeant Rely On The Same Core Allegations ....................................................................................3

    B.     Status Of Securities Class Action ..................................................4

    C.     Status Of Individual Actions ..........................................................5

    D.     Criminal Proceeding Against Davenport And Tanner ............................5

    E.     Status Of TPP Litigation ................................................................6

ARGUMENT .................................................................................................... 7

I.     Staying The Actions Will Promote Efficiency And Judicial Economy........................... 8

    A.     Discovery Will Overlap Significantly Among All Related Cases .........................8

    B.     This Court's Reasoning In The Order Staying The TPP Litigation Applies With Equal Force Here ..................................................10

II.     A Stay Will Avoid Significant Expenses By Third Parties And Defendants Without Prejudicing Plaintiffs Or The Public ................................................... 12

III.     A Stay Of Limited Duration Is Appropriate ..................................................... 12

CONCLUSION ................................................................................................. 13

BACKGROUND ................................................................................................ 2

    **A.**     **The Seventeen Cases Against Valeant Rely On The Same Core Allegations** ....................................................................................3

    **B.**     **Status Of Securities Class Action** ..................................................4

    **C.**     **Status Of Individual Actions** ..........................................................5

    **D.**     **Criminal Proceeding Against Davenport And Tanner** ............................5

    **E.**     **Status Of TPP Litigation** ................................................................6

**ARGUMENT** .................................................................................................... 7

**I.**     **Staying The Actions Will Promote Efficiency And Judicial Economy** ....................... 8

    **A.**     **Discovery Will Overlap Significantly Among All Related Cases** .....................8

    **B.**     **This Court's Reasoning In The Order Staying The TPP Litigation Applies With Equal Force Here** ..................................................10

**II.**     **A Stay Will Avoid Significant Expenses By Third Parties And Defendants Without Prejudicing Plaintiffs Or The Public** ........................................... 12

**III.    A Stay Of Limited Duration Is Appropriate** ................................................................. 12

CONCLUSION ......................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### Other Authorities

*Acuna v. Brown & Root Inc.*,
200 F.3d 335 (5th Cir. 2000) ..................................................... 7

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*,
544 F.2d 1207 (3d Cir. 1976) .............................................. 7, 11

*Cima Labs, Inc. v. Actavis Grp. HF*,
2007 WL 1672229 (D.N.J. June 7, 2007) ................................. 9

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
718 F.3d 236 (3d Cir. 2013) ...................................................... 7

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
2017 WL 1658822 (D.N.J. Apr. 28, 2017) ............................... 4

*In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*,
2017 WL 3429342 (D.N.J. Aug. 9, 2017) ...................... passim

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .................................................................. 7

*Landmark Am. Ins. Co. v. Rider Univ.*,
2010 WL 4063199 (D.N.J. Oct. 15, 2010) ............................... 9

*MEI, Inc. v. JCM Am. Corp.*,
2009 WL 3335866 (D.N.J. Oct. 15, 2009) ............................... 8

*Nussbaum v. Diversified Consultants, Inc.*,
2015 WL 5707147 (D.N.J. Sept. 28, 2015) ............................ 12

*Obale v. Att'y Gen. of the United States*,
453 F.3d 151 (3d Cir. 2006) ...................................................... 7

*Peterson v. Matlock*,
2011 WL 5416571 (D.N.J. Nov. 7, 2011) .............................. 10

*Power Survey, LLC v. Premier Utility Servs., LLC*,
124 F. Supp. 3d 338 (D.N.J. 2015) ........................................ 12

*Sheridan v. Iheartmedia, Inc.*,
2016 WL 1059268 (D.N.J. Mar. 16, 2016) ......................... 8, 12

*Tatum v. Chrysler Grp., LLC*,
2011 WL 6303290 (D.N.J. Dec. 16, 2011) ............................... 8

*United States v. Breyer*,
    41 F.3d 884 (3d Cir. 1994) ............................................................................ 7

*United States v. Mellon Bank, N.A.*,
    545 F.2d 869 (3d Cir. 1976) .......................................................................... 8

*Wall v. Bil-Jim Constr. Co., Inc.*,
    2017 WL 3527697 (D.N.J. Aug. 16, 2017) ................................................. 8

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*,
    7 F. Supp. 2d 523 (D.N.J. 1998) ................................................................. 6

*Will v. Calvert Fire Ins. Co.*,
    437 U.S. 655 (1978) ...................................................................................... 7

### Regulations

15 U.S.C.A. § 78u-4(b)(3)(B) ........................................................................... 5

Defendants submit this memorandum in support of a stay of proceedings pursuant to the Court's October 19, 2017 Order to Show Cause.  A stay of the securities class action and "opt-out" cases will allow discovery to be aligned and coordinated with the related civil RICO action that is already stayed and future cases yet to be filed.  Neither the Court nor any party can, or should, have an interest in duplication of effort or conflicting results.  A stay will promote efficiency and conservation of resources, without meaningful prejudice to any party.

The universe of Valeant-related litigation is sprawling.  The actions involve 25 named defendants and 133 named plaintiffs; 114 nonparties have received subpoenas so far, and 24 law firms have made an appearance.  Currently pending are a securities class action, fifteen individual opt-out securities actions, and a class action brought by third-party payors asserting federal RICO claims.  In the securities class action, the motion to dismiss has been decided and fact discovery has begun.  The RICO class action, which is still subject to a motion to dismiss, is stayed pending a criminal trial in the Southern District of New York where a former Valeant executive and a former Philidor executive are accused of running a criminal kickback scheme at Valeant's expense.  In the individual opt-out actions, discovery is automatically stayed by statute until motions to dismiss are resolved.  Motions to dismiss have been briefed in some of the opt-out cases but not all.  Moreover, additional opt-out cases are highly likely.  *See, e.g.*, Ex. 1 (Dunkelberger, *Florida Eyes Lawsuit Against Valeant Pharmaceuticals*, ORLANDO SENTINAL, Oct. 24, 2017) (reporting that the Florida State Board of Administration will decide next month whether to file an opt-out action).[1]

---

[1]     References to Ex. __ refer to Exhibits to the Declaration of Richard Hernandez, dated October 27, 2017.

The Court has full discretion to stay these proceedings in the interest of justice and judicial efficiency, and is entirely justified to exercise that discretion in favor of a stay. *First,* discovery in all of these actions will overlap significantly, involving the same documents, the same nonparty discovery, and requiring testimony from many of the same deponents. This is true not only among the civil cases, but with respect to the criminal trial as well, as plaintiffs in the securities class action are seeking all documents produced to the United States Attorney for the Southern District of New York in the criminal action. If the cases proceed on different tracks, the parties to these actions, as well as the scores of nonparties who have been and will be subpoenaed for discovery, will be burdened by duplicative and expensive discovery. Unless the schedules for the various actions are aligned, the Court and parties will face, among other things, multiple case management conferences and duplicative or overlapping motion practice and expert discovery. A piecemeal approach is not just inefficient, but will allow for gamesmanship among different sets of lawyers.

*Second,* when it issued its stay of the RICO class action, this Court found that a limited stay of civil proceedings imposes minimal prejudice on civil plaintiffs. The same finding should be made here. The delay is relatively short in duration, with the related criminal trial set to begin in April. This lack of prejudice contrasts with the very real prejudice that defendants and scores of nonparties face if they are required to engage in multiple rounds of meet and confers, search emails multiple times, and present experts on different schedules.

A stay is the only pragmatic resolution of these issues.

## BACKGROUND

On October 19, 2017, "[i]n consideration of the interests of justice, including the ongoing criminal proceedings and the potential overlapping discovery, and based on the Court's inherent

power to control the matters on its docket," the Court issued a *sua sponte* order to show cause in these related civil actions as to whether all of the above-captioned civil actions should be stayed, and temporarily stayed these matters pending resolution of the order to show cause.

**A.    The Seventeen Cases Against Valeant Rely On The Same Core Allegations**

The seventeen related cases pending before this Court against Valeant and other defendants named in some or all of those actions are:

- A putative class action brought by Valeant investors bringing claims under the Securities Exchange Act of 1934 and the Securities Act of 1933.  *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (the "Securities Class Action");

- Fifteen individual securities actions, all asserting claims under the Exchange Act and some also asserting claims under the Securities Act, New Jersey common law, or New Jersey's RICO statute claiming that securities fraud constituted predicate acts of racketeering (the "Individual Actions");

- A putative class action brought by third-party payors asserting federal RICO claims.  *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, No. 16-cv-3087 (the "TPP Litigation").

Though these cases vary in the causes of action asserted and the defendants named, they all relate to the same underlying alleged conduct.  A key part of each plaintiff's allegations is that Valeant concealed its relationship with Philidor and that Philidor was engaged in various misconduct.  The complaints allege, among other things, that:

- Valeant created "a secret network of captive pharmacies" centered around Philidor.[2]

- Valeant employees worked at these "captive pharmacies" and used aliases to "conceal their identity as Valeant employees."

- Philidor altered prescriptions so they would be filled with Valeant drugs and not generics.

---

[2]    Citations to the various complaints for these allegations are set forth in Appendix A.

- Philidor altered pharmacy identification information so that claims for reimbursements would not be denied.

- Philidor waived patients' co-pays to remove their incentive to request cheaper drugs.

- Philidor acquired pharmacies across the country to use their licenses.

- Philidor resubmitted rejected reimbursement requests until Pharmacy Benefit Managers ("PBMs") accepted them.

Philidor is a defendant in the TPP Litigation, but not in either the Securities Class Action or the Individual Actions. Plaintiffs in the Securities Class Action acknowledge, however, that Philidor is a "critical non-party" and have subpoenaed Philidor for an undeniably significant amount of documents that may be relevant to both plaintiffs and defendants—requests which have already resulted in extensive motion practice and pre-motion letters before this Court. *See* Ex. 2 (Ltr. from R. Robbins to M.J. Lois H. Goodman) at 1; Ex. 3 (Ltr. from C. Seeger to M.J. Lois H. Goodman) at 1.[3]

### B.   Status Of Securities Class Action

On April 28, 2017, the Court resolved defendants' motions to dismiss the Securities Class Action complaint, specifically referencing allegations regarding Philidor. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *3–8 (D.N.J. Apr. 28, 2017).

Document discovery—primarily of documents previously produced in the course of government investigations—has commenced. Defendants have produced over 450,000 pages of

---

[3]      *See also* Mot. to Expedite Discovery to Serve Subpoena on Non-Party (ECF No. 9), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (D.N.J. Nov. 20, 2015); (Vacated) Order Granting Plaintiff's Mot. for Expedited Discovery (ECF No. 10), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (Dec. 3, 2015); Mot. for Reconsideration (ECF No. 19), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (Dec. 17, 2015); Order Denying Mots. for Discovery; Granting Mot. for Reconsideration (ECF No. 143), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (July 22, 2016).

documents.  Plaintiffs have served 114 nonparty subpoenas, and received at least 280,000 pages

of documents.[4]  Among the parties subpoenaed are Philidor and Cambria Pharmacies, Inc.

("Cambria"), both of which have asked the Court to stay discovery as to them.  Philidor has

"objected to producing any documents during the pendency of the criminal proceedings" against

Gary Tanner and Andrew Davenport for the same reasons set forth in its briefs requesting a stay

in the TPP Litigation.  Ex. 4 (Ltr. from R. Robbins, D. Shifrin to M.J. Lois H. Goodman) at 1–2.

Cambria—allegedly part of the "Philidor network"—has objected on the same grounds.  Ex. 5

(Ltr. from R. Robbins, M. Onufrak to M.J. Lois H. Goodman) at 1–2.

### C.      Status Of Individual Actions

The earliest of the Individual Actions was filed on August 15, 2016.  The most recent

were filed only weeks ago, on September 28, 2017.  The Private Securities Litigation Reform

Act's stay of discovery remains in place in all fifteen Individual Actions.  15 U.S.C.A. § 78u-

4(b)(3)(B).  Partial motions to dismiss claims in ten of the pending actions have been fully

briefed.  Motions in the other five have not yet been filed.  It is likely that additional individual

actions may be filed.  For example, the press has reported that the State of Florida is due to

decide whether to file an opt-out action next month.  *See* Ex. 1.

### D.      Criminal Proceeding Against Davenport And Tanner

On January 27, 2017, the United States Attorney for the Southern District of New York

indicted Andrew Davenport and Gary Tanner, filing a superseding indictment on August 30,

2017.  Superseding Indictment (ECF No. 66), *United States v. Tanner, et al.*, No. 17-cr-61

(S.D.N.Y. Aug. 30, 2017).  Tanner, a former Valeant executive, and Andrew Davenport,

---

[4]      Plaintiffs last provided defendants with productions made by nonparties on September 8, 2017.

Philidor's former CEO, are charged with conducting "an illegal, concealed kickback scheme that collectively yielded them tens of millions of dollars. . . ." *Id.* ¶¶ 6, 16.  Tanner is alleged to have concealed the kickback scheme from Valeant.  *Id.* ¶¶ 8(a)–(b).  The indictment further alleges that Tanner took other actions contrary to Valeant's interests, such as "resisting efforts by Valeant's senior leadership to enter into business relationships with specialty pharmacies other than Philidor." *Id.* ¶¶ 9(a)–(b).  Trial is scheduled to begin on April 30, 2018.  Order (ECF No. 71), *United States v. Tanner, et al.*, No. 17-cr-61 (S.D.N.Y. Sept. 20, 2017).

  **E.**  **Status Of TPP Litigation**

  On December 14, 2016, plaintiffs in the TPP Litigation filed a consolidated complaint. Defendants moved to dismiss, and Philidor, Andrew Davenport and Matthew Davenport also moved to stay proceedings pending the criminal trial.  On August 9, 2017, the Court issued an order staying proceedings in the TPP Litigation until the conclusion of the criminal case against Andrew Davenport and Gary Tanner.  *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2017 WL 3429342 (D.N.J. Aug. 9, 2017).  Accordingly, the motions to dismiss were terminated but not decided.

  The Court's decision considered the six factors set out in *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526–27 (D.N.J. 1998), for determining whether a stay of a civil case is appropriate given a pending criminal proceeding, finding that: (1) the "overlap between the criminal and civil cases weighs in favor of granting a stay"; (2) proceeding with the TPP Litigation could jeopardize the moving defendants' Fifth Amendment rights; (3) plaintiffs failed to identify any particular prejudice that would be caused by a stay; (4) the lack of a stay would burden defendants; (5) "resolution of the criminal case will moot, clarify or otherwise affect various contentions in the civil case"; and (6) the public would not be harmed by a stay.  *In re*

*Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2017 WL 3429342, at *2–4 (internal citations omitted).

## ARGUMENT

The Court has complete discretion to stay proceedings to promote efficiency, judicial economy and the interests of justice.  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see also Obale v. Att'y Gen. of the United States*, 453 F.3d 151, 157 (3d Cir. 2006) ("The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication") (quoting *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994)) (superseded by regulation on other grounds).  Indeed, the Supreme Court has acknowledged that "[n]o one can seriously contend that a busy federal trial judge, confronted . . . with competing demands on [the Court's] time . . . is not entrusted with a wide latitude in setting [their] own calendar." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665 (1978).

This power is at its peak in complex, multifaceted litigations such as this one, where "district courts must have wide discretion to manage 'complex issues and potential burdens on defendants and the court'—namely . . . through managing discovery." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013) (quoting *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000)).  Courts in this district routinely use their "inherent power to manage [their] docket[s]" to stay cases where "proceeding with discovery" could "undermine[] judicial efficiency and expose[] the parties to potentially unnecessary costs." *Tatum v. Chrysler*

*Grp., LLC*, 2011 WL 6303290, at *2–3 (D.N.J. Dec. 16, 2011) (staying "action *sua sponte* for purposes of avoiding duplicative litigation and discovery," and collecting cases); *see also MEI, Inc. v. JCM Am. Corp.*, 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) ("A stay is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court.").

As this Court previously noted, in evaluating a stay, courts "balance 'competing interests' and decide [whether] judicial economy would best be served by a stay of civil proceedings." *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2017 WL 3429342, at *3 (D.N.J. Aug. 9, 2017) (citing *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 872–73 (3d Cir. 1976)).  The key relevant interests are "(1) whether a stay will simplify issues and promote judicial economy, (2) the balance of harm to the parties, and (3) the length of the requested stay." *Sheridan v. Iheartmedia, Inc.*, 2016 WL 1059268, at *3 (D.N.J. Mar. 16, 2016).  Defendants respectfully suggest that all three of these considerations strongly favor a stay.

## I.   Staying The Actions Will Promote Efficiency And Judicial Economy

Given the significant overlap of the issues in the related cases, coordination of discovery across the cases will benefit the Court and the parties.  *See Wall v. Bil-Jim Constr. Co., Inc.*, 2017 WL 3527697, at *3 (D.N.J. Aug. 16, 2017) ("[T]he economies and efficiencies of litigation are best served when matters involving common sets of operative facts, common questions of law, overlapping parties and overlapping witnesses are coordinated for discovery purposes.").

### A.   Discovery Will Overlap Significantly Among All Related Cases

All seventeen cases currently pending before this Court share common questions of law and fact—indeed, they arise out of substantively similar facts and, while some plaintiffs assert additional claims, all of the cases generally assert federal securities claims.  Where cases involve "common questions of law and fact," coordinated discovery is appropriate given the "interests of

judicial economy." *Cima Labs, Inc. v. Actavis Grp. HF*, 2007 WL 1672229, at *8, *10 (D.N.J. June 7, 2007) (granting motions to consolidate and stay actions where doing so would "avoid duplication of efforts" and "likely simplify the issues in both cases").  Indeed, where discovery in multiple actions "would be largely duplicative" and where determination of issues before the court would benefit from further discovery in other actions, a stay "is an exercise of 'wise judicial administration.'"  *Landmark Am. Ins. Co. v. Rider Univ.*, 2010 WL 4063199, at *8 (D.N.J. Oct. 15, 2010) (staying matter *sua sponte*).

Here, the allegations in the Securities Class Action and the Individual Actions are substantively similar, and substantially overlap the allegations in the TPP Litigation.  This is particularly true with respect to the allegations concerning Philidor.  Specifically, each of the actions repeat allegations about the formation of Philidor and its "network" of "captive pharmacies," the involvement of certain Valeant executives in forming Philidor and their use of aliases, and a litany of allegations concerning Philidor's techniques in seeking reimbursement from third parties.  *See* Appendix A.  A comparison of these allegations leaves no doubt as to the overlap among the core allegations in each of the related actions.

Additionally, the securities actions will all involve the same discovery, and much of that discovery will overlap with discovery in the TPP Litigation.  Plaintiffs will seek documents about the same topics and will seek depositions of the same witnesses.  The parties will need to negotiate the scope of discovery, including the custodians to be searched for electronic information, the search terms to apply, the date range to search, and other parameters.  It would be efficient for the parties to engage in that process once, with all plaintiffs across all the actions. And if the parties cannot reach agreements on certain issues, it would foster judicial economy for

those disputes to presented to the Court once with all parties in interest heard at the same time. Similarly, witnesses should be deposed a single time across the related cases.

The actions filed to date involve 25 parties named as defendants and 133 named plaintiffs.  One hundred and fourteen parties have received third party subpoenas in the Securities Class Action and 24 law firms represent currently-named parties.  There is no need to subject all of these stakeholders in the related litigations to the unnecessary expense and uncertainty that would be associated with multi-track discovery across the proceedings.  Given the massive number of parties, nonparties and counsel involved in these actions, it would be more efficient to stay proceedings in all actions, rather than proceed with discovery on substantively similar issues in the Securities Class Action now, the Individual Actions in a few months, the TPP Litigation after the criminal trial ends, and in any later-filed opt-out actions even later.

**B.     This Court's Reasoning In The Order Staying The TPP Litigation Applies With Equal Force Here**

The fact that much of the discovery in the cases will relate to Philidor is all the more reason to stay proceedings.  Philidor's, Tanner's, Andrew Davenport's, and perhaps other subpoenaed non-parties' "assertion of their Fifth Amendment privilege in response to discovery requests and deposition" in each of the pending actions "may 'burden the Court with deciding a constant stream of privilege issues'"—a possibility that weighs heavily in favor of a stay. *Peterson v. Matlock*, 2011 WL 5416571, at *5 (D.N.J. Nov. 7, 2011).  Paralleling the approach taken in the TPP Litigation and staying these actions pending the conclusion of the criminal trial will render these disputes moot.

"In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp.*, 544 F.2d at 1215.  In staying the TPP Litigation, this Court held that:

> [T]he criminal proceeding alleges that Andrew Davenport and Tanner acted against the interests of Valeant, and the civil proceeding alleges that Defendants acted together against the interests of the third-party payors.  ***While the two proceedings do not advance the same legal theories, each relies on common witnesses, events, and documents.***  At issue in the criminal proceeding will be the actions of Andrew Davenport and Tanner in creating and supporting Philidor with Valeant resources, driving sales of Valeant products, and causing Valeant to enter an option agreement to purchase Philidor.  These will similarly be at issue in the civil proceeding.  Therefore, it stands to reason that ***the same conduct . . . will be relevant in both cases, and that the civil and criminal cases are likely to share common witnesses and documents.  This overlap between the criminal and civil cases weighs in favor of granting a stay***.

*In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2017 WL 3429342, at *2 (emphasis added).  The same reasoning holds here.  Neither Tanner nor Andrew Davenport are defendants in the securities actions, but those cases and the TPP Litigation "rel[y] on common witnesses, events, and documents" including Andrew Davenport and Tanner's actions, the sales of Valeant products through Philidor, and Valeant's purchase of an option to acquire Philidor.  Indeed, securities class plaintiffs have sought all documents produced to the United States Attorney for the Southern District of New York in the criminal matter.  *See* Ex. 6 (Pls.' First Request for Production of Documents to Valeant) at 8.  Moreover, as Tanner has been charged with criminally defrauding Valeant regarding Philidor, the evidence against him could directly relate to the securities plaintiffs' scienter allegations.  Thus, as in the TPP Litigation, it is therefore "likely that 'resolution of the criminal case will moot, clarify, or otherwise affect various contentions in the civil case[s].'" *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2017 WL 3429342, at *3.

## II.     A Stay Will Avoid Significant Expenses By Third Parties And Defendants Without Prejudicing Plaintiffs Or The Public

A stay would not unduly prejudice any party.  Delay, which is inherent in any stay, is not sufficient to block the Court's inherent power to order one.  *Nussbaum v. Diversified Consultants, Inc.,* 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015) ("Because delay results inherently from the issuance of a stay, courts have found that mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage.").  As this Court noted when staying the TPP Litigation, "delays in civil cases are fairly common.  Plaintiffs have asserted no injury that is particularly unique beyond delay.  Plaintiffs are protected from continuing losses by the ability to obtain interest at judgment."  *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2017 WL 3429342, at *3 (internal citations omitted); *Power Survey, LLC v. Premier Utility Servs., LLC*, 124 F. Supp. 3d 338, 339 (D.N.J. 2015) (where a stay results in "the simplification of issues," and might reduce the number of issues to be litigated, courts in this district use their discretion to stay proceedings, even where a plaintiff "may suffer some prejudice").  Nothing requires a different result here, as plaintiffs will not face any prejudice beyond a short delay.  By contrast, the potential prejudice to defendants and nonparties is significant, as double-, triple- or multiple-track discovery on substantively similar issues will result in significantly increased and unnecessary costs.  Nor will the public be harmed by a stay of these civil proceedings brought by private plaintiffs.  *See In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, 2017 WL 3429342, at *4.

## III.     A Stay Of Limited Duration Is Appropriate

Courts have recognized that issuing a stay is appropriate in situations where the duration of a proposed stay is necessarily limited, even when the precise date that the stay will end is unknown.  *See, e.g.*, *Sheridan*, 2016 WL 1059268, at *4 (granting a "relatively short" stay of

unknown duration where the "progress [of related appeals] suggest[ed] that a stay of this litigation would be in effect for several months at most").  This is precisely the situation here, as the criminal trial is scheduled to begin in April 2018, after which the parties can coordinate discovery across all of these related cases.

## CONCLUSION

For the foregoing reasons, this Court should stay discovery across all actions until such time that the stay is lifted in the TPP Litigation.

s/ Richard Hernandez
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

*Local Counsel for Valeant Pharmaceuticals International, Inc., Robert L. Rosiello, Ari S. Kellen, Ronald H. Farmer, Colleen Goggins, Robert A. Ingram, Anders Lönner, Theo Melas-Kyriazi, Robert N. Power, Norma Provencio, Katherine B. Stevenson and Jeffrey W. Ubben*

Paul C. Curnin (admitted *pro hac vice*)
Jonathan K. Youngwood (admitted *pro hac vice*)
Craig S. Waldman (admitted *pro hac vice*)
Daniel J. Stujenske (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Valeant Pharmaceuticals International, Inc., Robert L. Rosiello, Ari S. Kellen, Ronald H. Farmer, Colleen Goggins, Robert A. Ingram, Anders Lönner, Theo Melas-Kyriazi, Robert N. Power, Norma Provencio, Katherine B. Stevenson and Jeffrey W. Ubben*

13

_s/ Mark A. Berman_
Mark A. Berman
HARTMANN DOHERTY ROSA BERMAN
& BULBULIA, LLC
65 Route 4 East
River Edge, NJ 07661
Telephone: (201) 441-9056
Fax: (201) 441-9435

_Local Counsel for the Bank Offering
Defendants_

Richard A. Rosen (admitted _pro hac vice_)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990

_Counsel for the Bank Offering Defendants_

_s/ James S. Richter_
James S. Richter
Melissa Steedle Bogad
WINSTON & STRAWN LLP
One Riverfront Plaza, Suite 730
Newark, New Jersey  07102
Telephone:  (973) 848-7645
Facsimile:  (973) 848-7650

_Local Counsel for Howard B. Schiller_

Robert Y. Sperling (admitted _pro hac vice_)
Joseph L. Motto (admitted _pro hac vice_)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone:  (312) 558-5600

Elizabeth P. Papez (admitted _pro hac vice_)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
Telephone:  (202) 282-5000

_Counsel for Howard B. Schiller_

_s/ Richard Hernandez_
Richard Hernandez
McCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: 973/848-8615
Fax: 973/297-6615

_Local Counsel for Defendant Tanya Carro_

William J. Schwartz (admitted _pro hac vice_)
Laura Grossfield Birger (admitted _pro hac
vice_)
COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Fax: (212) 479-6275

_Counsel for Defendant Tanya Carro_

_s/ Holly Wintermute_
Holly Wintermute
Bruce E. Yannett
DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836

Jonathan R. Tuttle (admitted _pro hac vice_)
Ada Fernandez Johnson (admitted _pro hac
vice_)
801 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: (202) 383-8036
Fax: (202) 383-8118

_Counsel for Defendant J. Michael Pearson_

14

s/ Cara David
Cara David
Barry A. Bohrer (admitted *pro hac vice*)
Michael L. Yaeger (admitted *pro hac vice*)
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY  10022
(212) 756-2000
Cara.david@srz.com

*Counsel for Defendant Debora Jorn*

s/ A. Ross Pearlson
A. Ross Pearlson
James Van Splinter
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300

*Local Counsel for Defendant*
*PricewaterhouseCoopers LLP*

James J. Capra, Jr. (admitted *pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Kenneth Y. Turnbull (admitted *pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737

*Counsel for Defendant*
*PricewaterhouseCoopers LLP*

Dated: October 27, 2017

**APPENDIX A**

| Allegation | Complaint Citations |
|---|---|
| Valeant created of "a secret network of captive pharmacies" centered around Philidor. | *TPP Litigation* Consol. Compl. ¶ 9 ("Defendants secretly developed a nationwide network of captive pharmacies, including and at the center of which was Philidor"); *Securities Class Action* Consol. Compl. ¶ 12 ("Philidor was the primary pharmacy in Valeant's secret network"); *BloombergSen* Compl. ¶ 9; *BlueMountain* Compl. ¶¶ 3, 53, 124; *Boeing* Compl. ¶¶ 7, 79–85; *Discovery Global* Compl. ¶¶ 3, 41, 99; *Equity Trustees* Compl. ¶ 9; *Incline Global* Compl. ¶¶ 3, 39, 97; *Janus* Am. Compl. ¶¶ 3, 70, 141; *Lord Abbett* Compl. ¶¶ 7, 93–99; *Mississippi* Compl. ¶¶ 7, 79–85; *MSD Torchlight* Compl. ¶¶ 3, 39, 97; *Okumus* Compl. ¶¶ 6,7, 42; *Pentwater* Compl. ¶ 9; *Principal Funds* Compl. ¶ 9; *T. Rowe Price* Compl. ¶ 9; *VALIC* Compl. ¶¶ 3, 53, 124. |
| Valeant employees worked at these "captive pharmacies" and used aliases to "conceal their identity as Valeant employees." | *TPP Litigation* Consol. Compl. ¶ 9 ("Valeant employees worked at those pharmacies using aliases to conceal their identity as Valeant employees"); *Securities Class Action* Consol. Compl. ¶ 12 ("Philidor was the primary pharmacy in Valeant's secret network, and was formed with the assistance of Valeant employees who used aliases to conceal their involvement at Philidor."); *BloombergSen* Compl. ¶ 81; *BlueMountain* Compl. ¶¶ 63, 143; *Boeing* Compl. ¶¶ 44, 82; *Discovery Global* Compl. ¶¶ 51, 118; *Equity Trustees* Compl. ¶ 90; *Incline Global* Compl. ¶¶ 49, 116; *Janus* Am. Compl. ¶¶ 80, 160; *Lord Abbett* Compl. ¶ 58, 96; *Mississippi* Compl. ¶ 44, 82; *MSD Torchlight* Compl. ¶¶ 49, 116; *Okumus* Compl. ¶ 54; *Pentwater* Compl. ¶ 80; *Principal Funds* Compl. ¶ 82; *T. Rowe Price* Compl. ¶ 80; *VALIC* Compl. ¶¶ 63, 143. |
| Philidor altered prescriptions so that they could be filled with Valeant drugs and not generics. | *TPP Litigation* Consol. Compl. ¶ 9 ("Defendants instructed employees to change codes on prescriptions to ensure that the prescriptions would be filled with Valeant drugs, rather than generic equivalents"); *Securities Class Action* Consol. Compl. ¶ 116 ("Philidor clandestinely altered prescriptions for Valeant products to include a 'DAW' indication without the consent of the prescribing physician or the patient, making it appear as though the physician or patient desired Valeant's expensive branded drug, rather than the cheaper alternative."); *BloombergSen* Compl. ¶ 107; *Boeing* Compl. ¶ 101; *Equity Trustees* Compl. ¶ 116; *Lord Abbett* Compl. ¶ 115; *Mississippi* Compl. ¶ 101; *Okumus* Compl. ¶ 8; *Pentwater* Compl. ¶ 106; *Principal Funds* Compl. ¶ 108; *T. Rowe Price* Compl. ¶ 106. |

| | |
|---|---|
| Philidor altered pharmacy identification information so that claims for reimbursements would not be denied. | *TPP Litigation* Consol. Compl. ¶ 9 ("Defendants falsified pharmacy identification information to bill TPPs for prescriptions in order to fraudulently bypass the TPPs' denials of claims for reimbursements"); *Securities Class Action* Consol. Compl. ¶ 116 ("By utilizing a different pharmacy's NPI number – such as R&O, Orbit Pharmacy, or West Wilshire, Philidor was able to hide its involvement and ensure reimbursement from insurers for Valeant drugs that it otherwise could not have secured."); *BloombergSen* Compl. ¶¶ 109–12; *BlueMountain* Compl. ¶ 147; *Boeing* Compl. ¶¶ 95, 97–98; *Discovery Global* Compl. ¶ 122; *Equity Trustees* Compl. ¶¶ 118–21; *Incline Global* Compl. ¶ 120; *Janus* Am. Compl. ¶ 164; *Lord Abbett* Compl. ¶ 109, 111–12; *Mississippi* Compl. ¶¶ 95, 97-98; *MSD Torchlight* Compl. ¶ 119; *Okumus* Compl. ¶ 67; *Pentwater* Compl. ¶ 108-110; *Principal Funds* Compl. ¶ 110-13; *T. Rowe Price* Compl. ¶ 108-11; *VALIC* Compl. ¶ 147. |
| Philidor waived patient co-pays to remove their incentive to request cheaper drugs. | *TPP Litigation* Consol. Compl. ¶ 9 ("Defendants waived patient co-pays to remove patients' incentive to seek out cheaper drugs, and then misrepresented the 'actual charges' for Valeant drugs by failing to account for the co-pay waivers"); *Securities Class Action* Consol. Compl. ¶¶ 12, 68, 116 ("Philidor employed zero copay practices to increase sales by removing incentives for patients to use much cheaper generics."); *BloombergSen* Compl. ¶ 12; *BlueMountain* Compl. ¶ 64; *Boeing* Compl. ¶¶ 8, 87; *Discovery Global* Compl. ¶ 52; *Equity Trustees* Compl. ¶ 12; *Incline Global* Compl. ¶ 50; *Janus* Am. Compl. ¶ 81; *Lord Abbett* Compl. ¶¶ 8, 101; *Mississippi* Compl. ¶¶ 8, 87; *MSD Torchlight* Compl. ¶ 50; *Okumus* Compl. ¶¶ 8, 43–44; *Pentwater* Compl. ¶ 12; *Principal Funds* Compl. ¶ 12; *T. Rowe Price* Compl. ¶ 12; *VALIC* Compl. ¶ 64. |
| Philidor acquired pharmacies across the country to use their licenses. | *TPP Litigation* Consol. Compl. ¶ 9 ("Defendants illegally acquired pharmacies to further the Valeant Enterprise by enabling Philidor to indirectly operate in states where it had been denied a license"); *Securities Class Action* Consol. Compl. ¶¶ 107, 116 ("Undeterred by the denial, Philidor found an indirect and deceptive way to operate in California. R&O had a California license and was owned and operated by pharmacist Russell Reitz ('Reitz'). Reitz put R&O up for sale in late 2014 and Isolani stepped in to buy it."); *BloombergSen* Compl. ¶¶ 89, 92; *BlueMountain* Compl. ¶ 144; *Boeing* Compl. ¶ 95, 101; *Discovery Global* Compl. ¶ 119; *Equity Trustees* Compl. ¶¶ 98, 101; *Incline Global* Compl. ¶ 117; *Janus* Am. Compl. ¶ 161; *Lord Abbett* Compl. ¶ 109; *Mississippi* Compl. ¶ 95; *MSD Torchlight* Compl. ¶ 117; *Okumus* Compl. ¶ 67; *Pentwater* Compl. ¶ 88, 91; *Principal Funds* Compl. ¶¶90, 93; *T. Rowe Price* Compl. ¶¶ 88, 91; *VALIC* Compl. ¶ 144. |

| Philidor resubmitted rejected reimbursement requests until PBMs accepted them. | *TPP Litigation* Consol. Compl. ¶ 9 ("Defendants responded to PBMs' rejections of reimbursement requests for prescriptions for Valeant brand-name drugs by resubmitting the requests at different prices and volumes until the PBMs agreed to pay for them."); *Securities Class Action* Consol. Compl. ¶ 116 ("This tactic was described by former Philidor employees interviewed by The Wall Street Journal and Bloomberg. It was also contained in Philidor's employee training manual which provided, 'We have a couple of different 'back door' approaches to receive payment from the insurance company' where they 'will not pay us for medication…. If denied, the next step is to add the Cambria Central Fill insurance and run that as the primary.'") *BloombergSen* Compl. ¶ 108; *BlueMountain* Compl. ¶ 147; *Boeing* Compl. ¶ 44; *Discovery Global* Compl. ¶ 122; *Equity Trustees* Compl. ¶ 117; *Incline Global* Compl. ¶ 120; *Janus* Am. Compl. ¶ 164; *Lord Abbett* Compl. ¶ 58; *Mississippi* Compl. ¶ 44; *MSD Torchlight* Compl. ¶ 119; *Okumus* Compl. ¶ 67; *Pentwater* Compl. ¶ 107; *Principal Funds* Compl. ¶ 109; *T. Rowe Price* Compl. ¶ 107; *VALIC* Compl. ¶ 147. |