**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| T. ROWE PRICE GROWTH STOCK FUND, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC. et al., <br><br> Defendants. | Civil Action No. 16-5034 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |
| EQUITY TRUSTEES LIMITED AS RESPONSIBLE ENTITY FOR T. ROWE PRICE GLOBAL EQUITY FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br> Defendants. | Civil Action No. 16-6127 (MAS) (LHG) |
| PRINCIPAL FUNDS, INC. and PRINCIPAL VARIABLE CONTRACTS FUNDS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, et al., <br><br> Defendants. | Civil Action No. 16-6128 (MAS) (LHG) |

BLOOMBERGSEN PARTNERS FUND
LP and BLOOMBERGSEN MASTER
FUND LP,

        Plaintiffs,

v.

VALEANT PHARMACEUTICALS
INTERNATIONAL, INC., et al.,

        Defendants.

Civil Action No. 16-7212 (MAS) (LHG)

**SHIPP, District Judge**

This matter comes before the Court on twenty Motions to Dismiss in the above matters by Defendants Tanya Carro ("Carro"), Deborah Jorn ("Jorn"), Valeant Pharmaceuticals International, Inc. ("Valeant"), Robert Rosiello ("Rosiello"), Ari S. Kellen ("Kellen") (Valeant, Rosiello, and Kellen collectively, "Valeant Defendants"), J. Michael Pearson ("Pearson"), and Howard B. Schiller ("Schiller") (all collectively, "Defendants").[1] Plaintiffs opposed the motions (ECF No.

---

[1] The following motions are currently before the Court:
   1. *T. Rowe Price Growth Stock Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Civil Action No. 16-5034 ("*T. Rowe Price*"): Motion to Dismiss by Carro (ECF No. 34).
   2. *T. Rowe Price*: Motion to Dismiss by Jorn (ECF No. 35).
   3. *T. Rowe Price*: Partial Motion to Dismiss by Valeant Defendants (ECF No. 36).
   4. *T. Rowe Price*: Partial Motion to Dismiss by Schiller (ECF No. 37).
   5. *T. Rowe Price*: Partial Motion to Dismiss by Pearson (ECF No. 38).
   6. *Equity Trustees Limited as Responsible Entity for T. Rowe Price Global Equity Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Civil Action No. 16-6127 ("*Equity Trustees*"): Motion to Dismiss by Carro (ECF No. 33).
   7. *Equity Trustees*: Motion to Dismiss by Jorn (ECF No. 35).
   8. *Equity Trustees*: Partial Motion to Dismiss by Valeant Defendants (ECF No. 36).
   9. *Equity Trustees*: Partial Motion to Dismiss by Schiller (ECF No. 37).
   10. *Equity Trustees*: Partial Motion to Dismiss by Pearson (ECF No. 38).
   11. *Principal Funds, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Civil Action No. 16-6128 ("*Principal Funds*"): Motion to Dismiss by Carro (ECF No. 32).

49)[2] and Defendants (except Pearson) replied. (ECF Nos. 58, 59, 60, 61.)[3]

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Rule 78.1. For the reasons stated below, Valeant Defendants' Partial Motions to Dismiss are **DENIED**; Schiller's Partial Motions to Dismiss are **DENIED**; Pearson's Partial Motions to Dismiss are **DENIED**; Carro's Motions to Dismiss are **DENIED**; and Jorn's Motions to Dismiss are **DENIED**;

I. <u>Background</u>

Plaintiffs in these matters are investment funds that purchased Valeant securities between January 4, 2013 and August 10, 2016. (Compl. 1, ECF No. 1.) These are direct actions arising out of the same facts and circumstances as the class action currently pending before the Court under docket number 15-7658 ("Class Action"). The Court assumes the parties' familiarity with the underlying facts and recites the facts only to the extent necessary to decide these motions.

---

12. *Principal Funds*: Motion to Dismiss by Jorn (ECF No. 34).
13. *Principal Funds*: Partial Motion to Dismiss by Valeant Defendants (ECF No. 35).
14. *Principal Funds*: Partial Motion to Dismiss by Schiller (ECF No. 36).
15. *Principal Funds*: Partial Motion to Dismiss by Pearson (ECF No. 37).
16. *BloombergSen Partners Fund LP, et al. v. Valeant Pharmaceuticals International Inc., et al.*, Civil Action No. 16-7212 ("*BloombergSen*"): Motion to Dismiss by Carro (ECF No. 33).
17. *BloombergSen:* Motion to Dismiss by Jorn (ECF No. 34).
18. *BloombergSen:* Partial Motion to Dismiss by Valeant Defendants (ECF No. 35).
19. *BloombergSen:* Partial Motion to Dismiss by Schiller (ECF No. 36).
20. *BloombergSen:* Partial Motion to Dismiss by Pearson (ECF No. 37).

[2] For ease of reference, record citations refer to *T. Rowe Price* unless otherwise specified.

[3] Each party that submitted briefing submitted an omnibus brief in each of the related actions. Plaintiffs in all of the actions submitted one omnibus brief on behalf of all of the Plaintiffs and filed the brief in each action.

3

The Complaints allege that Valeant engaged in a fraudulent scheme to artificially inflate the Company's revenues and profits, which caused securities to trade at artificially inflated prices, and resulted in damages to the investment funds when the truth about Valeant's business practices was revealed. (Compl. ¶¶ 1-17.) Specifically, Plaintiffs allege that Valeant hid the truth about practices that carried enormous risk (*id.* ¶ 8), such as the use of a secret pharmacy network (*id.* ¶¶ 9-11, 75-126), "extraordinary price gouging" (*id.* ¶ 12), fictitious and improper accounting (*see e.g., id.* ¶¶ 1, 5, 14, 125-26; 147-228), and other deceptive practices (*see e.g. id.* ¶¶ 1-12, 58-125, 127-39).

According to the Complaints, Defendants made false and misleading representations about Valeant (*id.* ¶¶ 147-326, 439), which Plaintiffs relied upon in purchasing Valeant securities. (*Id.* ¶¶ 470-91). Plaintiffs allege that as the misconduct was revealed, between September 28, 2015 and August 10, 2016, Valeant's stock price fell from over $262 per share to less than $25 per share, resulting in market capitalization losses for the Company's shareholders of over $76 billion dollars. (*Id.* ¶¶16-17, 440-69.)

Plaintiffs in these actions bring claims under: (i) Securities and Exchange Act Section 10(b) and Securities and Exchange Commission Rule 10b-5 thereunder ("Section 10(b)"); (ii) Securities and Exchange Act Section 18(a) ("Section 18"); and (ii) Securities and Exchange Act Section 20(a) ("Section 20(a)").[4] The Valeant Defendants, Pearson, and Schiller move to Dismiss the Section 18 claims (Count II) in each of the actions and to limit the Section 10(b) claims (Count I) to purchases made before October 30, 2015. (Valeant Defs.' Moving Br., ECF No. 36-1; Pearson

---

[4] Plaintiffs in *T. Rowe Price*, *Equity Trustees*, and *Principal Funds* also bring additional claims under Sections 11, 12(a)(2), and 15 of the Securities Act. These counts, however, are not relevant to the instant motions.

4

Notice of Mot., ECF No. 38; Schiller's Moving Br., ECF No. 37-1.)[5] Pearson also moves to limit Section 20(a) claims (Count III) to purchases made before October 30, 2015.[6] (Pearson Notice of Mot. 2.) Defendants Carro and Jorn move to dismiss the claims against them in their entirety. (Carro's Moving Br., ECF No. 34-1; Jorn's Moving Br., ECF No. 35-1.)

## II. Legal Standard

When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* at 210-11. Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Where a plaintiff pleads fraud, however, the plaintiff "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Zuniga v. Am. Home Mortg.*, No 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . . , a party must state with

---

[5] Pearson and Schiller incorporate and rely on Valeant's arguments. (*See* Pearson's Notice of Mot. 3; Schiller's Moving Br. 3.) For efficiency, the Court omits duplicative citations to Pearson and Schiller's briefing where Defendants raise the same arguments.

[6] Pearson "relies upon the memorandum of law submitted by Valeant in support of its partial motion to dismiss Plaintiffs' complaints and all further filings and proceedings had in these actions" instead of submitting his own brief. Pearson does not identify a basis for limiting Count III liability under Section 20(a) and the Valeant Defendants did not brief this issue. Pearson submitted similar filings in six related actions before this Court where he asked the Court to limit the scope of Section 20(a) claims for the same reason as claims under Section 10(b) claims because liability under Section 20(a) is derivative of liability under Section 10(b). (*See e.g.*, Pearson's Notice of Mot., Civ. No. 16-7321, ECF No. 39.) Although Pearson's Notice of Motion is not clear, it appears he makes the request here on the same basis.

5

particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). Additionally, the Private Securities Litigation Reform Act ("PSLRA") requires that a securities fraud complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006)).

### III. Discussion

#### A. Section 18 Claims (Count II)

Section 18 creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the SEC. 15 U.S.C. § 78r(a).[7] In order to state a claim under Section 18, Plaintiffs must plead

---

[7] In pertinent part, Section 18 provides:

> Any person who shall make or cause to be made any statement in any application, report, or document . . . which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person . . . who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

6

actual reliance on a false or misleading statement. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 283. A Section 18 claim, however, does not require that defendants acted with scienter or any particular state of mind. *Id.*; *see also In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 193 (1st Cir. 2005); *Magna Inv. Corp. v. John Does One Through Two Hundred*, 931 F.2d 38, 39-40 (11th Cir. 1991).

Defendants[8] argue that Plaintiffs' claims under Section 18 fail to meet the heightened pleading requirements for reliance because Plaintiffs did not identify the particular transactions made in reliance on the alleged false or misleading statements. (Valeant Defs.' Moving Br. 7-11.) Defendants argue that the Complaints "simply list approximately year-long periods and estimate the number of purchases made, without specifying which purchases were made in reliance on which statements in which filings, let alone how many purchases were made or when." (Valeant Defs.' Moving Br. 9.) Valeant Defendants cite two cases from the Southern District of New York in support of their argument that Plaintiffs must tie every purchase to a relied-upon statement to survive a motion to dismiss. (*Id.* at 9-10.) In response, Plaintiffs argue that the cases cited by Defendants are factually distinguishable and, in any event, "are inconsistent with the majority view, including recent decisions from within the Second Circuit." (Pls.' Opp'n Br. 17-18, ECF No. 49.) Plaintiffs argue that they have sufficiently "identified with particularity the specific false and misleading statements and omissions that they relied upon when purchasing the Company's common stock." (*Id.* at 17.) The Court agrees. "Requiring plaintiffs to link particular misrepresentations with particular trades in their allegations of direct reliance would impose

---

15 U.S.C. § 78r(a).

[8] The term "Defendants" in this section excludes Carro and Jorn.

additional burdens without significantly improving the quality of notice to defendants and without affording much added protection from reputation-endangering and extortionate frivolous suits." *WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2005 WL 6788446 (E. D. Pa. May 16, 2015) (quoting *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 678 (E.D. Pa. 2004)); *see also In re Able Labs. Sec. Litig.*, No. 05-2681, 2008 WL 1967509, at *1, *10, *26 (D.N.J. Mar. 24, 2008). The Court, therefore, is not persuaded that Plaintiffs must link every purchase to a specific misstatement to meet Section 18's pleading requirement. Plaintiffs have identified the statements on which they relied, in specific documents filed with the SEC, and pled actual "eyeball" reliance on these documents and statements in purchasing the securities at issue. (Compl. ¶¶ 155-255; 327-56; 476-83, 494-99.) The Court, therefore, finds that Plaintiffs have satisfied the standard for pleading actual reliance under Section 18.

Defendants also argue that Plaintiffs' Section 18 claims should be limited, specifically in *BloombergSen*, because certain purchases occurred prior to February 28, 2014—the date of the earliest SEC filing at issue in the Section 18 claims—and therefore "reliance allegations are not just implausible—they are impossible." (Valeant Defs.' Moving Br. 10; *see also* Schiller's Moving Br. 4.) Defendants further argue that Plaintiffs only allege that the investment advisors read and relied upon Valeant's 2014 10-K, which was filed on February 25, 2015, further supporting the argument that earlier purchases should be excluded. (*Id.* at 10 n.10.) In response, Plaintiffs state that "the BloombergSen Plaintiffs' Section 18 claim does not concern purchases of Valeant securities ***before*** February 2015. Rather, the BloombergSen Plaintiffs purchased the Valeant securities at issue ***after*** Defendants' filing of their false and misleading Form 10-K on February 25, 2015." (Pls.' Opp'n Br. 18 (internal citation omitted) (emphasis in orginal).) The Court agrees

8

that a reasonable reading of the Complaint establishes this conclusion and the Court need not engage in a further analysis of this issue.[9]

Accordingly, Valeant Defendants, Pearson, and Schiller's Motions to Dismiss Count II are **DENIED**.

### B. Exchange Act 10(b) and Rule 10b-5 (Count I)

Defendants[10] move to limit Count I to securities purchases that occurred prior to October 30, 2015. (Valeant Defs.' Moving Br. 12-15.) Valeant Defendants argue that "this Court should find that the 'truth was revealed' by no later than October 30, 2015" (*id.* at 15), which would preclude Plaintiffs from relying on the fraud-on-the-market theory for purchases that occurred after this date. Plaintiffs respond by arguing that this issue has already been rejected by the Court in connection with the loss causation issue in the Class Action, but, in any event, Defendants cannot establish the defense as a matter of law on the basis of the allegations. (Pls.' Opp'n Br. 8-9.) Plaintiffs argue that the truth about Valeant's operations was only partially disclosed by October 2015 and identify subsequent corrective disclosures that caused Valeant's stock price to decline by material amounts and caused further losses. (*Id.* at 10-14.)

Under the fraud-on-the-market presumption, the price of a security is "assumed to have incorporated the alleged misrepresentations" and a Section 10(b) plaintiff "is entitled to a presumption of reliance if he bought securities in an efficient market." *Pinker v. Roche Holdings*

---

[9] Defendants also argue that any purchases made more than three years prior to the filing of the Complaints should be barred by Section 18's Statute of Repose. (Valeant Defs.' Moving Br. 11-12.) The *BloombergSen* Complaint was filed on October 13, 2016. (*BloombergSen* Compl., ECF No. 1.) A reasonable reading of the Plaintiffs' Complaints and their unequivocal statement in the motion papers that the Section 18 claims include only purchases made after February 2015 establish that Defendants' arguments are inapplicable here. The Court, therefore, need not engage in a further discussion on this issue.

[10] The term "Defendants" in this section excludes Carro and Jorn.

9

*Ltd.*, 292 F.3d 361, 373 (3d Cir. 2002). A defendant can rebut the presumption that misrepresentations affected the price of its stock by showing that the truth of the matter was already known. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) (citing *Provenz v. Miller*, 102 F.3d 1478, 1492 & n.4 (9th Cir. 1996)). The defendant seeking to dismiss a claim on this basis must establish that as a matter of law, the statement or omission is not misleading because the true facts have already entered the market. *In re Enzymotec Sec. Litig.*, No. 14-5556, 2015 WL 8784065, at *16 (D.N.J. Dec. 15, 2015). Courts recognize that this question is highly fact specific and rarely appropriate for resolution at the pleadings stage. *Ganino*, 228 F.3d at 167 (citing *Prozenz*, 102 F.3d at 1493 (explaining that the defense can only be established if "no rational jury could find that the market was misled.")).

The Court declines to limit Count I at this time. The Complaints, when read in the light most favorable to Plaintiffs, do not conclusively establish that the full "truth was revealed" to the market by October 30, 2015. The Court, therefore, **DENIES** Valeant Defendants, Pearson, and Schiller's motions with respect to Count I of these matters. Defendant Pearson also moves to limit Count III to exclude purchases made after October 2015. (Pearson Notice of Mot. 2.) For the same reasons set forth with regard to the Section 10(b) claims, the Court **DENIES** Defendant Pearson's motion with respect to Count III of the Complaints.

### C. Defendant Carro and Defendant Jorn's Motions to Dismiss

Defendants Carro and Jorn move to dismiss the Complaints against them in their entirety. Count I of the respective Complaints, which state causes of action under Section 10(b), are the only counts applicable to these individual Defendants.[11]

---

[11] As an initial matter, the Court notes that both Carro and Jorn moved to dismiss the Section 10(b) claims against them in the Class Action. (Class Action, ECF Nos. 166, 169).) Their Class Action

### i. *Carro's Motion to Dismiss*

Carro argues that the Complaints against her should be dismissed because: (i) Plaintiffs do not allege Carro made any false statements (Carro's Moving Br. 5-11, ECF No. 34-1); and (ii) Plaintiffs do not allege that Carro acted with scienter (*id.* at 11-17).

As to the issue of pleading false statements, Carro admits Plaintiffs have identified two "allegedly misleading statements made by Ms. Carro" during a call with investors on October 26, 2015. (*Id.* at 3, 5.) Carro argues, however, that the statements were "accurate recitations of Valeant's historical disclosure analysis concerning Philidor." (*Id.* at 6.) The Court is not persuaded. Courts have recognized that "[s]ome statements, although literally accurate, can become through their context and manner of presentation, devices which mislead investors." *See In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 05-1151, 2011 WL 3444199, at *9 (citing *McMahon & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990)). "[T]he disclosure required by the securities laws is measured not by literal truth but by the ability of the material to accurately inform rather than mislead prospective buyers" *Id.* (quoting *McMahon*, 900 F.2d at 579).

---

motions included the arguments set forth by Carro and Jorn on these matters. (*Id.*) The Court denied both Class Action motions. (Class Action, ECF No. 216.) Jorn moved for reconsideration (Class Action, ECF No. 220), which was also denied. (Class Action, ECF No. 255.) On the instant motions, Plaintiffs rely on the Court's decision in the Class Action. (Pls.' Opp'n Br. 25-29.) Defendants reply that it is improper for Plaintiffs to rely on the Court's Class Action decision because the Court did not explicitly analyze the arguments in Carro and Jorn's motions. (Jorn's Reply Br. 8, ECF No. 59 ("[i]t is not true that this Court 'rejected Jorn's argument'; rather, the Court did not consider it fully."); Carro's Reply Br. 2, ECF No. 58.) The Court disagrees. As the Court later explained in its decision on Jorn's Motion for Reconsideration of the Court's April 28, 2017 Order, "[t]he fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter. . . ." (Class Action, Sept. 5, 2017 Mem. Op. 3, ECF No. 255) (citing *Cap. Inv. Funding LLC v. Lancaster Grp. LLC,* No. 08-4714, 2015 U.S. Dist. LEXIS 136033, at *7 (D.N.J. Oct. 6, 2015)).) The Court's April 28, 2017 decision specifically and carefully considered and decided the motions filed by Carro and Jorn.

Carro also argues that other statements Plaintiffs seek to ascribe to Carro, which she does not dispute were false, cannot be attributed to her under the standard set forth by *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). (Carro's Moving Br. 8.) The statements at issue here include statements made by other executives at presentations that Carro also attended and statements in "group-published documents." (*Id.* at 8-10.) Carro argues that "[i]t strains credulity to suggest that Carro had 'ultimate authority' over statements made by her bosses, simply because she was present and did not interpose any objection." (Carro's Reply Br. 7 n.6.) This argument, however, is better suited for adjudication at a later stage. The Court recognizes that this question will ultimately be a fact-intensive inquiry, however, at this preliminary stage of the proceedings, viewing all facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently plead that these statements can be attributed to Carro. The Court, therefore, finds that Plaintiffs have sufficiently plead falsity as to Carro.

Next, Carro argues that Plaintiffs have not adequately plead scienter.[12] (Carro's Moving Br. 11-17.) A claim under Section 10(b) must "state with particularity facts giving rise to a strong inference that the defendant acted with . . . scienter." *Cooper Tire*, 834 F.3d at 490 (quoting 15 U.S.C. § 78u-4(b)(2)(A)) (internal quotations omitted). [T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "[A]n inference of scienter must be more than merely

---

[12] Plaintiffs argue that the scienter allegations are essentially a verbatim version of the Class Action allegations that were found sufficient by the Court and the Court should find the allegations are sufficient for the same reasons. (Pls.' Opp'n Br. 25-26.) The Court agrees. Nevertheless, the Court will analyze Carro's arguments.

plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* Additionally, the Court must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23.

Carro argues that none of Plaintiffs' scienter allegations relate to the statements made by Carro on October 26, 2015 (Carro's Moving Br. 12-13), the Company's statements about Carro's "improper conduct" are too ambiguous to establish a strong inference of scienter (*id.* at 13-16), and the allegations of scienter in the Complaints are premised on an "impermissible assumption" that Carro must have known about the false or misleading statements because of her position in the Company (*id.* at 16-17). Plaintiffs respond that scienter only requires pleading "recklessness," which is satisfied by pleading "knowledge of facts or access to information contradicting [the individual's] public statements," which they have done here. (Pl.'s Opp'n Br. 25 (quoting *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001).) The Court agrees.

A holistic review of the Complaints establishes that Plaintiffs have sufficiently plead scienter. The Court has rejected Carro's position that the only relevant statements are those Carro made on October 26, 2015. In any event, the Court finds a strong inference of scienter plead with respect to all of the statements at issue. The Complaints include allegations that Carro approved improper accounting relating to Philidor (Compl. ¶¶ 125-26), publicly defended the improper accounting in response to a report questioning whether Valeant was inflating revenue (*id.* ¶ 382), and was ultimately placed on administrative leave for "improper conduct" related to Valeant's accounting restatement, including providing inaccurate information to the Ad Hoc Committee investigating the false revenues. (*Id.* ¶¶ 30, 315, 353, 382-83, 390, 412.) These allegations, coupled with the allegations about the Company's alleged wrongdoing, statements made by Carro,

13

Carro's position in the Company, and her access to confidential non-public information sufficiently establish a strong inference of scienter.[13] Carro's Motions to Dismiss, therefore, are **DENIED**.

### ii. *Jorn's Motion to Dismiss*

Similarly, Jorn argues that Plaintiffs have failed to sufficiently allege scienter against her. Jorn claims that Plaintiffs' specific allegations against her are "nothing more than . . . Jorn was an executive and Jorn knew that dermatology products were sold through Philidor." (Jorn's Moving Br. 5.) Jorn argues that "simply being an executive is not enough to establish scienter." (*Id.*) Plaintiffs respond that they are not asserting that Jorn's positon alone is sufficient evidence of scienter, but taken together with other allegations—such as her direct responsibility for several drugs that were sold in immense quantities through Philidor, which she knew or should have known did not meet the criteria for a specialty pharmacy, her involvement in improper copay practices, and her sudden and unexpected departure—meet the pleading standard for scienter. (Pls.' Opp'n Br. 28-29.)

The Complaints allege that Jorn, who led the Dermatology department, which was responsible for a substantial portion of Philidor's sales, was "forced out of the Company" after "revelations of persuasive misconduct." (Compl. ¶ 14.) The Complaints also allege that Jorn was responsible for drugs sold in "massive quantities" through Philidor (*id.* ¶ 411), participated in investor meetings where she made false statements, including statements about Valeant's access programs, Valeant's growth, and the performance of medications sold through Philidor, (*id.* ¶ 181-182), and that an e-mail message between Kellen and Pearson indicated that Kellen and Jorn

---

[13] Carro also "joins in the arguments made in Section III of the Omnibus Memorandum in Support of Valeant, Rosiello, and Kellen's Partial Motions to Dismiss Plaintiff's Complaints." (Carro's Moving Br. 17 n.10.) The Valeant Defendants' brief, however, does not contain a Section III.

planned to meet with District Managers to identify Philidor practices they should "push harder to build [] out" in an effort to "fuel growth." (*Id.* ¶ 374.) These allegations, read in conjunction with the allegations about Valeant's wrongdoing with respect to Philidor (*id.* ¶ 75-139), Jorn's position with the company (*id.* ¶ 411), Jorn's access to confidential non-public information (*id.* ¶ 367), and Jorn's sudden forced departure (*id.* ¶ 411), all create a strong inference of scienter.

For these reasons, Jorn's Motions to Dismiss are **DENIED**.

## IV. Conclusion

For the reasons set forth above, Valeant Defendants' Partial Motions to Dismiss are **DENIED**; Schiller's Partial Motions to Dismiss are **DENIED**; Pearson's Partial Motions to Dismiss are **DENIED**; Carro's Motions to Dismiss are **DENIED**; and Jorn's Motions to Dismiss are **DENIED**. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: January 12th, 2018